Argued March 17, affirmed April 21, petition for rehearing denied

## PACIFIC WESTBOUND CONFERENCE ET AL. *v.* LEVAL & CO., INC

269 P. 2d 541

*Albert E. Stephan,* of Seattle, Washington, argued the cause for appellants. With him on the briefs was Allan Hart, of Portland.

*James P. Cronan, Jr.,* of Portland, argued the cause for respondent and cross-appellant. With him on the briefs were Donald A. Schafer and Schafer, Holbrook & Cronan, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, BRAND and PERRY, Justices.

PERRY, J.

The plaintiffs are a voluntary association of numerous common carrier steamship companies duly organized under the authority of Title 46, USCA, cited as the "Shipping Act of 1916", and operating under the name of Pacific Westbound Conference. The members of the association operate ships in regular service, carrying cargo west-bound from ports on the Pacific coast of the United States and Canada to ports in the Far East.

The defendant, a corporation with its principal office in New York City, New York, maintaining a branch office in Portland, Oregon, is an extensive shipper of merchandise and other commodities by steamship.

In October, 1946, the plaintiffs entered into a contract with the defendant (the contract being designated as "Pacific Westbound Conference General Commodity Contract Rate Agreement") which provided that the defendant would consign all of its cargo shipments from Pacific coast ports via ships of carriers belonging to the Pacific Westbound Conference, and in consideration of the exclusive use of Conference ships, the defendant was to receive a lower tariff rate than that of a shipper who did not enter into such an exclusive contract of carriage. This exclusive contract of carriage, however, was not limited solely to the defendant, but was open to anyone who desired to enter into such an agreement.

The contract between the plaintiffs and the defendant also provided that should the defendant ship cargo with a carrier who was not a member of the Conference, then the shipper had breached the contract and would be liable in damages in a sum equal to the

contract tariff of the shipment, this amount being agreed to as liquidated damages in lieu of actual damages because of the impossibility or impracticability of determining the actual damage suffered by the plaintiffs.

The original contract as entered into was from time to time amended as to rates and terms by mutual agreement of the parties, the last revision and acceptance being on May 15, 1949.

In September, 1949, the defendant in violation of the contract agreement made a shipment from Astoria using a foreign flag vessel which was not a member of the Cónference, and this action was brought by the plaintiffs for damages suffered by breach of the contract. The matter was tried to the circuit court without a jury, the trial court finding that there had been a breach of the contract, but denying the plaintiffs a recovery. Subsequent to a determination by the trial court that the plaintiffs could not recover liquidated damages as provided in the contract, the court permitted the cause to be reopened and the court determined the actual amount of damages, but still denied recovery. The plaintiffs have appealed from the adverse judgment of the court, and the defendant has cross-appealed, claiming that the trial court was in error in permitting the plaintiffs to reopen the case for the purpose of proving their actual damages.

The serious question that confronts this court is whether or not it is necessary that the conference agreement and its amendments as entered into between the steamship companies in order to give validity to the contract of carriage as sued upon must set forth the proposed dual contract rate program and be approved by the United States Maritime Commission prior to the execution of the General Commodity

Contract Rate Agreement, or, in lieu thereof, that the General Commodity Contract Rate Agreement between these parties be first formally approved by the United States Maritime Commission.

The answer to this question must be determined from the construction of Title 46, USCA, and particularly § 814 thereof, which reads as follows:

"Every common carrier by water, or other person subject to this chapter, shall file immediately with the commission a true copy, or, if oral, a true and complete memorandum, of every agreement, with another such carrier or other person subject to this chapter, or modification or cancellation thereof, to which it may be a party or conform in whole or in part, fixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing, or destroying competition; pooling or apportioning earnings, losses, or traffic; alloting ports or restricting or otherwise regulating the number and character of sailings between ports; limiting or regulating in any way the volume or character of freight or passenger traffic to be carried; or in any manner providing for an exclusive, preferential, or cooperative working arrangement. The term "agreement" in this section includes understandings, conferences, and other arrangements.

"The commission may by order disapprove, cancel, or modify any agreement, or any modification or cancellation thereof, whether or not previously approved by it, that it finds to be unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, or between exporters from the United States and their foreign competitors or to operate to the detriment of the commerce of the United States, or to be in violation of this chapter, and shall approve all other agreements, modifications, or cancellations.

"Agreements existing at the time of the organization of the commission shall be lawful until disapproved by the commission. It shall be unlawful to carry out any agreement or any portion thereof disapproved by the commission.

"All agreements, modifications, or cancellations, made after the organization of the commission shall be lawful only when and as long as approved by the commission, and before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation.

"Every agreement, modification, or cancellation lawful under this section shall be excepted from the provisions of sections 1-11 and 15 of Title 15, and amendments and Acts supplementary thereto."

The memorandum of agreement which bound the various carriers together into the Pacific Westbound Conference was made and entered into on the 8th day of January, 1923, and duly approved by the Maritime Board (now existing as the United States Maritime Commission) on June 26, 1923. This agreement has from time to time been amended by the members of the Conference and the amendments duly approved by the United States Maritime Commission. The members of the Westbound Conference provide by their contract that their association together "is for the regulation of traffic and not of operation and only covers rates, tariffs, brokerage and matters directly relating thereto", and the parties to the Conference "agree and stipulate with each other that they will be bound by the agreement of two-thirds of their number * * * as to any tariff, freight rate, charge, brokerage, traffic regulation and/or, any other matter within the scope of this agreement with the same force and effect as if expressly made a part hereof." It is, therefore, readily seen that the action of two-thirds

of the members of the Conference in determining tariff rates and approving lower rates to exclusive users of Conference lines effects a change or modification in the agreement of the parties binding upon all members of the Conference.

Section 814 of Title 46, USCA, hereinbefore set out, provides that the term "agreement" as used in the act includes "understandings" and "other arrangements", and that all agreements, modifications or cancellations made subsequent to the organization of the Commission under the act *shall be lawful only when approved by the Commission and that it shall be unlawful, directly or indirectly, to carry out any agreement or understanding or practice until approved.*

Thus an agreement of dual rates as set forth in the contract sued upon is subject to the control of the United States Maritime Commission. The reason for this is readily understandable because the shipping act of 1916 permits the combining of a group of carriers and action by them that would be unlawful under §§ 1-11 and 15 of Title 15, UCLA, and the amendments and acts supplementary thereto, generally referred to as the Sherman Antitrust Act and the Clayton Act, and while, because of necessity in connection with the maintenance of adequate sea transportation for this country, Congress felt that the steamship companies could combine and operate to some extent in restraint of trade and carry on a monopolistic practice, for the protection of the public interest this was to be permitted only under due and proper supervision. The shipping act provides for prior approval.

We are impressed with the reasoning of the United States Court of Appeals for the District of Columbia Circuit in the case of *Isbrandtsen Company, Inc. v.*

*United States of America and Federal Maritime Board, et al.,* (decided January 21, 1954), wherein it is stated:

" * * * This pre-approval illegality stems from the fact that the Shipping Act specifically provides machinery for legalizing that which would otherwise be illegal under the anti-trust laws. The condition upon which such authority is granted is that the agency entrusted with the duty to protect the public interest scrutinize the agreement to make sure that the conduct thus legalized does not invade the prohibitions of the anti-trust laws any more than is necessary to serve the purposes of the regulatory statute. But until this is done, the agreement is subject to the operation of the anti-trust laws, under which price fixing agreements are illegal per se."

The Conference agreement and its amendments and changes as approved by the Maritime Commission does not provide for a reduced rate to shippers exclusively using ships of the Pacific Westbound Conference, and it is admitted that the contract of the parties litigant although filed was never approved. We are of the opinion that there must first be formal approval of this practice as to this particular Conference by the United States Maritime Commission before such an agreement is enforceable between the Conference and a shipper.

The pleadings and the evidence failing to show the necessary approval by the United States Maritime Commission, the circuit court was correct in its result.

Since we view the contract as being "unlawful" and, therefore, unenforceable before approval by the United States Maritime Commission, it is unnecessary to consider the other issues of error claimed by the parties.

The judgment of the trial court is affirmed.