**RIVER PLATE AND BRAZIL CON-
FERENCES, et al., Plaintiffs,**

v.

**PRESSED STEEL CAR COMPANY,
Inc., Defendant,**

**Federal Maritime Board, Intervenor.**

United States District Court
S. D. New York.
Sept. 17, 1954.

Kirlin, Campbell & Keating, New York City (Harold B. Finn, New York City, of counsel), for plaintiffs.

Olwine, Connelly & Chase, New York City (John Logan O'Donnell, Leo P. Arnaboldi, Jr., New York City, of counsel), for defendant.

Clarence G. Morse, Washington, D. C., for intervenor.

MURPHY, District Judge.

These are three motions, one by defendant for summary judgment, another by plaintiffs for a stay of proceedings and a third by the Federal Maritime Board for leave to intervene. The action is one by the River Plate and Brazil Conferences, an association of common carriers by water organized pursuant to Section 15 of the Shipping Act of 1916,[1] to recover damages allegedly sustained by plaintiffs in consequence of an alleged breach of contract by defendant of its freight agreement with plaintiffs. The

---

1.  46 U.S.C.A. § 814.

complaint, filed October 6, 1953, alleges that on or about September 30, 1953, defendant, Pressed Steel Car Company, Inc., shipped 430 box cars from Savannah, Georgia, to Santos, Brazil, in a common carrier, by water, which was not a member of the conference and thereby breached its agreement with plaintiffs under which defendant had agreed to forward exclusively in vessels belonging to plaintiff carriers "all shipments made or controlled directly or indirectly, by [defendant, its] agents, subsidiary, associated or parent companies and shipped from any United States or Canadian port, excepting Pacific Coast ports, to any port in Brazil, Uruguay, Paraguay and the Argentine * * *." The agreement provided that in consideration of the promise of the defendant shipper to ship exclusively with conference members as therein provided, plaintiffs' members would carry all shipments of the shipper within limits of their capacities at specified rates which were, of course, reduced ones. According to this agreement if the shipper patronized a carrier who was not a member of the conference, the shipper would be liable to conference members jointly "for dead freight thereon" and, further, the shipper would thereafter pay conference members "the non-contract tariff rates of freight then in effect instead of the rates herein specified". The agreement was to be effective between the dates of January 1, 1947, and December 31, 1947, with automatic renewal for one year and from year to year unless prior notice of cancellation was given by either party during the preceding year. The complaint further alleges that plaintiffs sustained damages by reason of defendant's violation and defendant is liable to plaintiffs "for dead freight on said shipment, in the sum of about $500,000 as nearly as can now be estimated".

Defendant's answer, filed October 26, 1953, denied generally all material allegations of the complaint, except the making of the agreement, and set up as affirmative defenses that the contract on which plaintiffs brought this action was illegal and unenforceable under the provisions of the Shipping Act of 1916, 46 U.S.C.A. § 801 et seq., and the anti-trust laws.

Under the Shipping Act of 1916, Congress made permissible voluntary associations of common carriers by water for the purpose of fixing rates and tariffs. Such agreements by these combinations are exempted from the prohibitions of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note in certain instances, but only after approval by an appropriate administrative agency.[2] Since 1950 the Federal Maritime Board has been charged with the administration of the Shipping Act of 1916. Its predecessors have been the United States Shipping Board (1916–33), the Department of Commerce (1933–36) and the United States Maritime Commission (1933–50).

The plaintiffs River Plate and Brazil Conferences consist of carriers which transport merchandise from the United States to the countries of Brazil, Paraguay, Uruguay and Argentina. The conference was organized when the members entered into a so-called basic conference agreement dated July 19, 1923, which was filed with the Shipping Board and approved by the Board on August 21, 1923, in accordance with Section 15 of the Shipping Act of 1916. From time to time the conference has amended its conference agreement and these amendments have also been approved by the Board or one of its successors.

According to the affidavits and exhibits submitted by defendant on its motion for summary judgment, neither the basic agreement among the carriers in those conferences nor any of its amendments filed and approved by the Shipping Board or its successors, makes any reference to the exclusive patronage, dual rate system. The documents filed and approved by the Shipping Board or

2.  46 U.S.C.A. § 814.

its successors include the basic agreement, a series of modifications, and the basic agreement embodying all approved modifications to date, presumably to March 19, 1954. In addition there is a statement filed on March 9, 1953, by the plaintiffs pursuant to General Order 76 of the Federal Maritime Board [3] which required steamship freight conferences to file information concerning dates, amounts of differentials and reasons for the use of current contract/non-contract rates, as well as copies of the form of all contracts pertaining to such rates. Two printed forms of contracts between the conference and shippers were appended by plaintiffs, and these are not substantially dissimilar to the form of contract on which this action by plaintiffs is based.

The principal question is raised by defendant in its motion for summary judgment, viz., that the contract sued upon is illegal because under Section 15 of the Shipping Act of 1916 (a) the contract between plaintiffs carriers and defendant shipper has not been approved by the Federal Maritime Board, or its predecessors; (b) apart from the question whether a particular carrier-shipper contract required approval to avoid illegality, no agreement between the carriers providing for dual rates for contract/non-contract shippers had been approved by the Federal Maritime Board or its predecessors; or (c) the Board has no power to approve such a contract or system providing for such contracts.

We consider this question, first, in the light of the motions of plaintiffs and the intervenor which are based on the identical ground that the Federal Maritime Board has exclusive primary jurisdiction to determine this question; and then, second, only if such motions are resolved against plaintiffs and the intervenor, whether defendant is entitled to summary judgment.

3. 17 F.R. 10175, effective November 11, 1952.

4. 46 U.S.C.A. § 814.

5. United States Navigation Co. v. Cun-

## I.

Section 15 of the Shipping Act of 1916 provides in part:

"All agreements, modifications, or cancellations made after the organization of the commission shall be lawful only when and as long as approved by the commission, and before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation." [4]

Whether or not the "agreements, modifications, or cancellations" which must be approved include ones between carriers and shippers, as well as those between carriers who are members of a conference, is not necessary to decide under any of these motions. It suffices to assume that only those between carriers are within the purview of the statute. The question posed by plaintiffs' and intervenor's motions is whether the Federal Maritime Board has exclusive primary jurisdiction to determine whether an arrangement between carriers, without approval of the Board, pursuant to which exclusive patronage, dual contract/non-contract rates and tariffs are offered to shippers makes such contract with a shipper illegal because of lack of administrative approval. A possible additional question might be whether determination of the issue whether there was approval or not by the Board is within the Board's exclusive primary jurisdiction.

The metes and bounds of questions within the primary jurisdiction of the Board have repeatedly been set by the Supreme Court: [5]

"The [Shipping] act is restrictive in its operation upon some of the activities of common carriers by water, and permissive in respect of others. Their business involves questions of an exceptional character,

ard Steamship Co., 284 U.S. 474, at page 485, 52 S.Ct. 247, at page 250, 76 L.Ed. 408; Far East Conference v. United States, 342 U.S. 570, at page 573–574, 72 S.Ct. 492, 96 L.Ed. 576.

the solution of which may call for the exercise of a high degree of expert and technical knowledge. Whether a given agreement among such carriers should be held to contravene the act may depend upon a consideration of economic relations, of facts peculiar to the business or its history, of competitive conditions in respect of the shipping of foreign countries, and of other relevant circumstances, generally unfamiliar to a judicial tribunal, but well understood by an administrative body especially trained and experienced in the intricate and technical facts and usages of the shipping trade, and with which that body, consequently, is better able to deal."

No doubt there are many questions affecting agreements among carriers which "may call for the exercise of a high degree of expert and technical knowledge", of the Federal Maritime Board, such as anti-trust[6] or even contract[7] actions involving resolution of disputed issues of fact depending "upon a consideration of economic relations, of facts peculiar to the business or its history, of competitive conditions in respect of the shipping of foreign countries, and of other relevant circumstances, generally unfamiliar to a judicial tribunal." We do not consider the question whether prior administrative approval of an exclusive patronage system with dual rates for contract/non-contract shippers is required by statute to be one of that genus. In Isbrandtsen Co. v. United States,[8] the Court of Appeals held that Section 15 of the Shipping Act of 1916 requires that the Federal Maritime Board approve an exclusive patronage, dual rate system before it

becomes effective, and in doing so overruled a contrary determination by the Board. The court observed:[9]

"In either case, § 15 requires that such agreements or modifications 'shall be lawful only *when* and as long as *approved*' by the Board. Until such approval is obtained, the Shipping Act makes it illegal to institute the dual rate system. And this illegality cannot be spirited away by action which the Board labels 'interlocutory * * * of a discretionary nature.' "

Where an appellate tribunal with jurisdiction to review orders of the Federal Maritime Board has already decided this question as a matter of law, recourse for determination of the same matter by the Board is hardly appropriate.[10]

The possible additional question, whether the Federal Maritime Board should determine whether or not it has approved the dual rate system of the plaintiffs' conference, does not appear to be in dispute. Defendant has submitted what it claims to be the entire file of agreements and modifications of plaintiffs approved by the Board or its predecessors, as well as a letter from an employee of the Board that these copies "constitute the entire agreement of that conference and that no collateral or related agreements have been filed by that conference for approval pursuant to Section 15 of the Shipping Act, 1916." Inspection by the court of the basic agreement and all of the amendments in this file nowhere discloses any reference to institution by the member carriers of exclusive patronage, dual rates for contract/non-contract shippers. The statement filed by plaintiffs with the Board

---

6. See, e. g., Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 494, 96 L.Ed. 572; United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408; United States v. Railway Express Agency, Inc., D.C.Del., 89 F.Supp. 981.

7. See El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053.

8. D.C.Cir., 211 F.2d 51, certiorari denied Japan-Atlantic & Gulf Conference v. U. S., 347 U.S. 990, 74 S.Ct. 852.

9. Id., 211 F.2d at page 56.

10. See Seatrain Lines, Inc. v. Pennsylvania R. Co., 3 Cir., 207 F.2d 255.

pursuant to its General Order 76, which has appended form contracts with shippers, is significantly marked "Received" and not "Approved" as are the basic agreement and its amendments in the Board's file. In their affidavit, plaintiffs do not dispute lack of approval by the Board, or even contend that their statement filed pursuant to General Order 76 constitutes such approval. In their brief, it is contended, "at the proper time, plaintiffs are prepared to meet these charges and to show that they are not only unfounded in fact, but also erroneous as a matter of law. \* \* \* This court, however, is not the proper forum for the presentation of such evidence \* \* \* which \* \* \* [is] within the exclusive primary jurisdiction of the Federal Maritime Board."

Even assuming a dispute that, by dint of its approval of the basic conference agreement with its modifications, the Board had approved the present arrangement, its resolution would not be a matter of exclusive primary administrative jurisdiction. As the court noted in the Isbrandtsen case.[11]

"The Board's position here is that it may allow the agreement to go into effect in advance of formal approval because the basic Conference agreement authorizes dual rate system agreements. It maintains that the basic Conference agreement carries with it the 'cover of authority' for subsequent changes of rates since the language of the basic agreement is as broad as that of the statute itself. If this is so, then no additional approval would be necessary to allow the dual rate system to go into effect.

"We think, however, that the Board's view is inconsistent with the clear language of § 15 of the Shipping Act."

Not only the nature of the question presented on these motions makes inapplicable exclusive primary jurisdiction by an administrative agency, but also the consideration that the doctrine is invoked by the plaintiffs who sought this judicial forum, and not by the defendant.[12]

Accordingly, plaintiffs' motion for a stay of proceedings on defendant's motion for summary judgment pending conclusion of appropriate proceedings before the Federal Maritime Board, must be denied. Since the motion of the Federal Maritime Board for leave to intervene and for a stay of these proceedings is on the identical grounds of their exclusive primary jurisdiction of the question presented by defendant's motion for summary judgment, it is also denied.

## II.

Plaintiffs' basic conference agreement and its amendments and changes approved by the Shipping Board and its successors does not provide for an exclusive patronage, dual rate system to contract/non-contract shippers, and it is clear that the contract between the plaintiffs and defendant had not been approved, although similar printed form contracts had been filed by plaintiffs with the Board. The Shipping Act of 1916 [13] explicitly makes such agreements among carriers "lawful only when and as long as approved by the commission, and before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation." No disputed issue of fact having been presented concerning the lack of approval by the Board of the dual rate system, the contract between plaintiffs carriers and defendant shipper which is the basis of this action must be held illegal.[14]

We think it follows that the consequence specified by the statute, *viz.*, that

---

11. Note 8, supra. 211 F.2d at page 56.

12. Cf. Pacific Westbound Conference v. Leval & Co., Or., 269 P.2d 541 with Far Eastern Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 572.

13. 46 U.S.C.A. § 814.

14. Isbrandtsen Co. v. United States, note 8 supra, 211 F.2d 51.

"before approval * * * it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement * * * ", makes valid as an affirmative defense to an action for damages for breach of such agreement the illegality of the contract because of lack of approval. In a substantially identical case, this result was reached by a State court.[15]

Accordingly, defendant's motion for summary judgment dismissing the complaint upon the ground that no agreement among carriers, authorizing an exclusive patronage contract between carriers and shipper, has the approval of the Federal Maritime Board or its predecessors, is granted.

---

15. Pacific Westbound Conference v. Leval & Co., Or., 269 P.2d 541.