**RIVER PLATE AND BRAZIL CONFER-
ENCES, Plaintiffs-Appellants,**

v.

**PRESSED STEEL CAR COMPANY, Inc.,
Defendant-Appellee,**

**Federal Maritime Board, Intervening
Petitioner.**

No. 62, Docket 23352.

United States Court of Appeals
Second Circuit.

Argued Oct. 5 & 6, 1955.

Decided Nov. 4, 1955.

Kirlin, Campbell & Keating, New York City (Louis J. Gusmano, Elmer C. Maddy, New York City, of counsel), for plaintiffs-appellants.

Olwine, Connelly & Chase, New York City (John Logan O'Donnell, Leo P. Arnaboldi, Jr., David P. Seaman, New York City, of counsel), for defendant-appellee.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The plaintiffs, River Plate and Brazil Conferences, are two conferences of common carriers by water organized under basic conference agreements approved in 1923 by the United States Shipping Board, predecessor of the present Federal Maritime Board. Although numerous modifications of the conference agreements as to such matters as membership and procedure were filed with the Board and approved from time to time, there is nothing in the record to show that the Board or any of its predecessors under the Shipping Act ever approved any system of preferential rates or the particular contract signed by the two conferences with the defendant Pressed Steel Car Company, Inc. in 1947 which was automatically renewed from year to year.

The complaint alleges breach of the contract by reason of defendant's shipping in September 1953 some 430 box cars with a non-conference carrier and seeks liquidated damages for the resulting dead freight in the amount of approximately $500,000. The defendant added to a general denial of breach of the contract the affirmative defenses that the contract was in violation of the Shipping Act, and that the contract is illegal and unenforceable under the anti-trust laws. The Shipping Act, 46 U.S.C.A. § 814 provides as follows:

"Every common carrier by water, or other person subject to this chapter, shall file immediately with the Federal Maritime Board a true copy, or, if oral, a true and complete memorandum, of every agreement, with another such carrier or other person subject to this chapter, or modification or cancellation thereof, to which it may be a party or conform in whole or in part, fixing or regulating transportation rates or fares; giving or receiving special rates, accommodations, or other special privileges or advantages; controlling, regulating, preventing, or destroying competition; * * * or in any manner providing for an exclusive, preferential, or cooperative working arrangement. The term 'agreement' in this section includes understandings, conferences, and other arrangements. * * *

"All agreements, modifications, or cancellations made after the organization of the commission shall be lawful only when and as long as approved by the Board, and *before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification, or cancellation.*

"Every agreement, modification, or cancellation lawful under this section shall be excepted from the provisions of sections 1–11 and 15 of Title 15, and amendments and Acts supplementary thereto. * * * *"
(Emphasis added.)

In support of the motion for summary judgment defendant's counsel produced the basic agreements and numerous modifications thereof, together with the certification of the Board's assistant secretary that these were all the approved modifications of the conference agreement up to March 18, 1954. Also submitted and certified was a statement filed by the conference in March 1953, pursuant to General Order 76 of the Board, 46 Code Fed.Regs. Sec. 236.1 which merely gave the Board general information with respect to rates in effect in November 1952. This general statement regarding rates was stamped "received" by the Board and was never approved or disapproved. Plaintiffs do not urge that this filing under General Order 76 constituted approval. Defendant also submitted a letter from Lloyd Tibbott, Chief, Regulation Office, Federal Maritime Board, stating that the certified docu-

ments described above "constitute the entire agreement of that Conference and that no collateral or related agreements have been filed by that Conference for approval pursuant to Section 15 of the Shipping Act." This letter was merely cumulative, adding nothing substantial to the certification of the Board's assistant secretary.

The plaintiffs came forward with nothing to combat the obvious conclusion from the record that the Board never approved any agreement of these conferences to contract for reduced rates for exclusive patronage and never approved any such contract with the defendant.

After defendant had moved for summary judgment plaintiffs moved to stay all proceedings "pending the conclusion of appropriate proceedings before the Federal Maritime Board." Simultaneously the Board moved to intervene under Rule 24(a) (2) and 24(b), Federal Rules of Civil Procedure, 28 U.S.C.A. and for a stay pending the conclusion of appropriate proceedings before it regarding the defense that "the freight agreement is illegal and unenforceable because it is in violation of the Shipping Act of 1916, which is a matter within the exclusive preliminary jurisdiction" of the Board. The affidavit of the Board's counsel in support of its motions stated that defendant's assertion of illegality raised "issues of fact not within the conventional experience of judges" which required the exercise of administrative discretion and which should therefore be passed upon by the Board. Although counsel stated that he was familiar with the proceedings, he set forth no facts whatever with regard to approval of the contract in question. Indeed counsel's affidavit did not even raise a suspicion that the facts were otherwise than as defendant's papers had alleged and as has been summarized above.

On this record Judge Murphy in an excellent opinion, 124 F.Supp. 88, granted summary judgment, denied the Board's motion to intervene and denied the two motions for a stay pending further proceedings before the Board. Thereafter plaintiffs' counsel moved for reargument and reconsideration of the three motions alleging

" * * * on information and belief, that plaintiffs' dual rate, contract/non-contract rate system was approved by the Federal Maritime Board and its several predecessors, acting on authority of Section 15 of the Shipping Act, 1916, as amended, on many occasions, not only when it approved the basic agreement in 1923, but from time to time thereafter during the past 25 years. Moreover, plaintiffs' contract system has never been disapproved by the Board or its predecessors. I am satisfied, therefore, and allege on information and belief, that the unverified statement of Mr. Lloyd Tibbott, annexed to Mr. O'Donnell's affidavit, is not accurate and that, upon cross-examination, other facts could be developed which would completely refute the accuracy of the statements made by him in his said letter. Affidavits setting forth the circumstances under which such approvals were granted by the Federal Maritime Board and its predecessors are not presently available to plaintiffs because the material facts pertaining thereto are contained in the official files of the Federal Maritime Board or its predecessors, or are known to persons who are past or former employees of the Board and its predecessors."

Judge Murphy granted the motion for reargument and adhered to his original decision. Plaintiffs appealed, but the Board took no appeal from the orders below.

Plaintiffs now contend that there was an issue of fact on the question whether the Board had approved the agreement. Clearly no such issue was raised prior to reargument. The wholly insufficient affidavit on information and belief presented on motion for reargument by the representative of plaintiffs, who were in a position to know whatever facts were available, likewise raised

no genuine issue of fact. Cf. DeLuca v. Atlantic Refining Co., 2 Cir., 1949, 176 F.2d 421 certiorari denied, 1950, 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581; Engl v. Aetna Life Insurance Co., 2 Cir., 1943, 139 F.2d 469; McClellan v. Montana-Dakota Utilities Co., D.C.Minn.1952, 104 F.Supp. 46, affirmed 8 Cir., 1953, 204 F.2d 166, certiorari denied, 1953, 346 U.S. 825, 74 S.Ct. 43, 98 L.Ed. 350.

■ Before us the plaintiff raised an argument, not made to the District Court, that the dual rate exclusive patronage system was informally approved by the Board by reason of the filing with the Board prior to 1927 of conference minutes containing references to this system. These facts and any argument sought to be made on them are too tardy. We cannot reverse the summary judgment on the basis of arguments and facts not presented to the District Court. Palmer v. Reconstruction Finance Corporation, 2 Cir., 1947, 164 F.2d 466; Carr v. Corning, 1950, 86 U.S.App.D.C. 173, 182 F.2d 14, 21. In any case the conference minutes referred to by the plaintiff contain no reference to a contract of the kind entered into with the defendant.

■ Thus it is clear from the record that there never has been approval of any conference agreement for preferential rates, as the Shipping Act clearly required. Such approval could not come subsequently, or retroactively, or by some interpretation of the Board made long after the event. The language of Section 15 is clear and categorical: "before approval * * * it shall be unlawful to carry out in whole or in part, directly or indirectly, any such agreement, modification or cancellation." Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51, certiorari denied sub nom. Japan-Atlantic and Gulf Freight Conference v. United States, 1954, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124. The contract with defendant was therefore plainly unlawful under the statute and plaintiffs may not maintain a suit based upon it. Pacific Westbound Conferences v. Leval & Co., 1954, 201 Or. 390, 269 P.2d 541.

■ This case presents no questions for determination by a Board of special competence to which Congress has committed questions requiring administrative expertise. When all that remains is for the Court to say what the plain words of the statute mean and whether the Board has acted, the doctrine of primary jurisdiction does not apply. Cf. Great Northern Ry. Co. v. Merchants Elevator Co, 1922, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. On the facts before us the question of approval is no more difficult than the score of yesterday's baseball game; the court can read the score as well as the Board. To send the parties to the Board on these facts would only be useless and time-consuming.

■ Two decisions of the Supreme Court much relied upon by the plaintiffs are not in point. The cases of United States Navigation Co. v. Cunard Steamship Co., 1932, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408, and Far East Conference v. United States, 1952, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576, presented quite a different situation. In each case the plaintiff alleged a conspiracy in violation of the anti-trust laws and that the defendant conference's unfiled agreement violated the Sherman Act. Thus it was not enough in those cases to show that the agreement was unlawful under the Shipping Act; the Court had the additional question whether the conduct complained of was within the prohibition of the anti-trust laws. That inquiry involved substantially the same factual issues as those which were within the special competence of the Shipping Board under the Shipping Act. Moreover, there were remedies under the Shipping Act virtually coextensive with those under the anti-trust laws and the Supreme Court relied at least in part on the exclusiveness of the Shipping Act remedies enforceable in proceedings before the Board, United States Navigation Co. v. Cunard Steamship Co., supra, 284 U.S. at page 485, 52 S.Ct. 247. A court, on the other hand, is obviously the only proper forum in which plaintiffs could seek to enforce the contract here in suit.

The plaintiff, having brought this action in the District Court, cannot now urge that the defendant go elsewhere and participate in proceedings before the Federal Maritime Board in order to get a preliminary determination as to validity of the contract on which the plaintiff sues and on which his claim must stand or fall. Having invoked the jurisdiction of the District Court to enforce their agreement, plaintiffs must now take the consequences of their failure to seek timely approval by the Board.

The orders and the judgment below are affirmed.