TRANS WORLD AIRLINES, INC.,
Plaintiff,

v.

Howard R. HUGHES, Hughes Tool Company and Raymond M. Holliday,
Defendants,

and

The Equitable Life Assurance Society of the United States et al., Additional Defendants on Counterclaims.

United States District Court
S. D. New York.

Feb. 7, 1963.

See also D.C., 29 F.R.D. 523.

Cahill, Gordon, Reindel & Ohl, New York City, for plaintiff; by John F. Sonnett, New York City.

Chester C. Davis, New York City, for defendant Hughes Tool Co.; by Chester C. Davis, Lola S. Lea and Maxwell Cox, New York City.

METZNER, District Judge.

Defendant Hughes Tool Company (Toolco) moves to dismiss the complaint pursuant to rules 12(b) (1) and 12(b) (6) of the Federal Rules of Civil Procedure on the grounds that the court lacks jurisdiction over the subject matter and that the complaint fails to state any claim upon which relief can be granted. The original notice of motion was filed on August 9th, 1961 and in addition to the grounds now urged requested summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure. In effect, the present notice of motion brings on for hearing the original motion.

In its brief Toolco has stated,

"At the suggestion of the Court (Transcript of pre-trial conference of September 6, 1961, pp. 50, 52) Toolco agreed to postpone the motions and thereafter commenced its pre-trial examination of TWA."

The opinion of this court of January 19th, 1963 sets forth the numerous occasions on which counsel for Toolco agreed that the motion as originally filed was not ripe for determination. Consequently, it was not a suggestion of the court, to which Toolco courteously agreed, that the matter be postponed. Rather it was an understanding by counsel that under the decisions of this circuit summary judgment in this type of case should not be considered until the deposition proceedings are completed. (See also Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)). The grounds now urged under rule 12(b) existed and were adverted to in the original notice of motion. Since counsel for Toolco has indicated he was prepared at that time to argue the matter, he could just as well have submitted it then, instead of requesting on January 14th, 1963 that the motion now be heard, when the taking of the deposition of Howard R. Hughes is imminent. Furthermore, the Special Master on October 25th, 1962 granted the second adjournment of this deposition, from October 29th to February 11th, 1963, and stated that the long adjournment of more than three months was in order to allow Toolco's counsel sufficient time to make whatever motions he thought were necessary.

On January 14th, 1963, when Toolco moved that its motion to dismiss be set down for hearing, it also requested that TWA first proceed by written interrogatories directed to Hughes, instead of by oral deposition. This request was formally denied on January 19th, 1963, after a pretrial conference held on January 17th.

Counsel for Toolco continually relates the taking of the deposition to a determination of the motion to dismiss. As I have indicated before, this deposition depends not only on the existence of alleged valid claims against Toolco, but on Toolco's counterclaims for $385,000,000 against plaintiff and the additional defendants.[1]

1. On the morning of the argument of this motion (February 6th, 1963) Toolco filed another notice of motion returnable February 8th, 1963 requesting that all further proceedings with respect to the counterclaims be stayed pending a disposition by the Civil Aeronautics Board of a "Complaint of Hughes Tool Company and Request for Investigation" which had been filed that day with the CAB. The only document attached to the notice of motion is a copy of the complaint filed with the CAB, seeking relief under sections 408, 409, 411 and 1002 of the Federal Aviation Act. That complaint names all of the additional defendants in the action pending in this court and also Pan American World Airways, Inc. and

So much for the underbrush. Now as to the merits of the motion, there is no doubt that the complaint on its face sets forth a claim against the defendant and is not subject to dismissal under rule 12(b) (6).

Briefly, the plaintiff, TWA, charges that Toolco, Hughes, and Holliday, named defendants, and Atlas Corporation have combined and conspired to restrain, and have attempted to monopolize, interstate and foreign commerce of the United States in the furnishing of jet aircraft and/or nonjet aircraft by sale, lease or other means, to TWA, and to TWA and other air carriers, in violation of sections 1 and 2 of the Sherman Act and sections 3 and 7 of the Clayton Act. It more specifically alleges that the defendants and Atlas combined to restrain commerce by providing financing of the acquisition by TWA of aircraft only upon the condition that TWA acquire all such aircraft from Toolco, and that they required TWA to boycott all suppliers of aircraft except Toolco, in violation of section 1 of the Sherman Act; and that sales and leases of jet-powered aircraft were made on the condition that the purchaser or lessee would not buy or lease the goods of a competitor of the vendor or lessor, in violation of section 3 of the Clayton Act. The complaint also charges that acquisitions of the stock of a corporation were made in violation of section 7 of the Clayton Act.

The first claim is concerned with acts allegedly committed during and prior to December 1960 which, it is claimed, violate all of the above mentioned statutes. The second claim deals with events occurring subsequent to December 1960 which are alleged to violate sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act. For these claims, plaintiff seeks treble damages, divestiture, and an injunction. The third claim charges that the defendants have wilfully and maliciously damaged the business of TWA by the acts alleged in the prior claims, and seeks damages and an injunction under the common law.

Defendant Toolco urges that the complaint be dismissed because the control by Toolco over the plaintiff was authorized by the CAB and was thereby exempted from the antitrust laws. The other ground urged is that the subject matter of the complaint is within the exclusive primary jurisdiction of the CAB.

 Toolco indicates that it has withdrawn its motion for summary judgment. However, its brief relies on matter outside the complaint to justify dismissal on the ground that the acts done by Toolco were pursuant to the exercise of control over TWA authorized by the CAB and therefore exempt from the antitrust laws. Dismissal under rule 12 (b) (6) is not warranted, though summary judgment might be available. Putnam v. Air Transport Ass'n of America, 112 F.Supp. 885 (S.D.N.Y.1953). The defendant appears to be in a procedural dilemma. Since defendant has raised the issue of exemption in its third affirmative defense, the court will consider this branch of the motion as one for judgment on the pleadings pursuant to rule 12(c). Matters dehors the complaint may be considered on the branch of the motion seeking dismissal for lack of subject matter jurisdiction. Cohen v. American Window Glass Co., 126 F.2d 111, 114 (2d Cir., 1942); Central Mexico Light & Power Co. v. Munch, 116 F.2d 85 (2d Cir., 1940); Moore v. Gorman, 75 F.Supp. 453 (S.D.N.Y.1948).

Toolco relies on the 1944 and 1950 orders of the CAB permitting Toolco to

Juan T. Trippe. It sets forth some of the allegations contained in the counterclaims and also makes reference to the proposed merger of TWA and Pan Am. It further alleges that Trippe, the dominant force in Pan Am, also has been in the position to influence the policies of Metropolitan Life Insurance Company, a large lender to TWA and one of the additional defendants in this action. Thus, the conspiracy alleged in the counterclaims has been enlarged by including Pan Am and Trippe. Jurisdiction of the CAB is predicated upon a claim that the decision in Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963), grants the CAB primary jurisdiction.

acquire control of TWA. 6 CAB 153; 12 CAB 192. These orders were issued pursuant to section 408(5) of the Civil Aeronautics Act of 1938,[2] which makes it unlawful without CAB approval for "any person engaged in any other phase of aeronautics, to acquire control of any air carrier in any manner whatsoever". Toolco was considered as one engaged in a phase of aeronautics because of its activities in the development of aircraft and accessories.

Section 414 of the Federal Aviation Act, 49 U.S.C. § 1384, provides that

"Any person affected by any order made under sections 408 [49 U.S.C. § 1378] * * * shall be, and is hereby, relieved from the operations of the 'antitrust laws' * * * and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

It is Toolco's contention that all the acts complained of by TWA are immunized from claims of violations of the antitrust laws because of section 414. This leads to an examination of what action was approved by the orders issued pursuant to section 408(5) and what is the scope of the exemption provided by the words "insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order", in section 414.

Statutory authority granted regulatory agencies to give exemption from the application of the antitrust laws is not unusual.[3] But the Supreme Court

has clearly stated that immunity from the antitrust laws is not to be lightly implied. California v. Federal Power Comm'n, 369 U.S. 482, 485, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962). Regulated industries are not per se exempt from the antitrust laws. United States v. Borden Co., 308 U.S. 188, 198–199, 60 S.Ct. 182, 84 L.Ed. 181. And it is elementary that repeals by implication are not favored. Georgia v. Pennsylvania R. R., 324 U.S. 439, 456, 65 S.Ct. 716, 89 L.Ed. 1051 (1945). In the latest decision by the Supreme Court, Pan American World Airways, Inc. v. United States, supra note 1, which will be discussed in detail below, the Court stated that the regulatory scheme here in question would not be read as designed completely to displace the antitrust laws "absent an unequivocally declared congressional purpose so to do." 371 U.S. at 305, 83 S.Ct. at 482. It went on to say that the antitrust problems "expressly entrusted to [the CAB] encompass only a fraction of the total." Ibid.

The orders of 1944 and 1950 relied on by Toolco merely approved the acquisition of control of TWA by Toolco. The antitrust violations that could possibly be present in such acquisition— that it was a contract in restraint of trade prohibited by section 1 of the Sherman Act, or was an attempt to monopolize prohibited by section 2 of the Sherman Act, or was an acquisition of stock prohibited by section 7 of the Clayton Act—were within the contemplation of the approval orders and protected by the exemption provided by section 414. Cf. United States v. Southern Pac. Co.,

2. This section is now 49 U.S.C. § 1378 (5). The Federal Aviation Act of 1958, 72 Stat. 737, 49 U.S.C. § 1301 et seq., superseded the Civil Aeronautics Act of 1938, 52 Stat. 973, making no changes relevant to the problem before the court.

3. See, e. g., 47 U.S.C. § 222(b) (1) (telegraph mergers approved by the Federal Communications Commission); 47 U.S.C. § 221(a) (telephone mergers approved by FCC); 46 U.S.C. § 814 (rate fixing and other agreements between water carriers approved by the Federal Maritime Board); 49 U.S.C. § 5 (railroad mergers approved by the Interstate Commerce Commission); 49 U.S.C. §§ 5a–b (agreements between carriers involving rates approved by ICC); 15 U.S.C. § 18 (exempting from the operation of section 7 of the Clayton Act transactions approved within their statutory authority by the CAB, FCC, Federal Power Commission, ICC, FMB, Secretary of Agriculture, and, in some cases, the Securities and Exchange Commission).

290 Fed. 443 (D.Utah 1923). These orders did not give Toolco a license to engage in other acts that normally may be forbidden by the antitrust laws. What has been approved and exempted is the fact of "acquisition of control", not activities engaged in by the controlling party subsequent to acquisition, which may be illegal.

■ I have found no case and none has been cited to me which interprets the words "necessary to enable such person to do anything authorized, approved, or required by such order", or similar exemptive language in other statutes, in a way that will sustain Toolco's position. In Putnam v. Air Transport Ass'n of America, supra, the plaintiff was attacking a claimed boycott by the defendants. The court in applying section 414 stated that the boycott was "the inevitable result" of the agreement sanctioned by the CAB which by its terms permitted the defendants to choose with whom they would deal. This is far different from the immunization claimed by Toolco. Congress could not have intended that restraints or attempts to monopolize, subsequent to an order allowing acquisition of control, were necessary to enable Toolco to do anything authorized or approved by the order.

One more point merits discussion under this branch of the motion. The second claim for relief is based on acts alleged to have been committed by the defendants and Atlas subsequent to December 1960. In December 1960 TWA moved before the CAB for modification of the original order of 1944 as amended. Approval was also sought

"under section 408 * * * for the transactions contemplated under the financing plan. Similarly sought is approval * * * under section 409 of the Act, of the interlocking relationships arising out of the designation of Raymond M. Holliday, as a representative of Toolco, and of Ernest R. Breech and Irving S. Olds as representatives of the banks and institutional investors, to serve as Voting Trustees under a Voting Trust set up for the Toolco-TWA stock."

This relief was requested in connection with the jet aircraft financing transactions which resulted in Toolco's putting its 78% stock interest in TWA under a voting trust, which in effect gave control of TWA to the lenders who are named as additional defendants in this action.

On December 29th, 1960 the CAB entered its order on this motion (Order No. E–16195). In the course of the opinion, the CAB said at page 6:

"Under these circumstances, we think it clear that Board action to facilitate TWA's acquisition of jet equipment is in the public interest. At the same time, however, it is evident that Toolco's control of TWA, as exercised through Hughes, has presented substantial problems requiring the Board's attention.

"In short, and without further description of these problems, the Board wishes to make clear the fact that it would anticipate the proper filing of an application under section 408 of the Act and the obtaining of the approval of the Board before Toolco would attempt to reassume control over TWA.[19] It is clear that such approval would not be forthcoming without a searching inquiry into the public interest factors affecting this control.[20] "

Footnote 19 in the above quotation reads as follows:

"The Option Agreement requires Toolco, in exercising the option, to provide a satisfactory opinion of counsel that the exercise of the option, by purchase of the notes, does not require governmental or regulatory approval or that such approval has been granted and is in force. No such provision could, of course, preclude dissolution of the voting trust after the ten-year term has expired. Nonetheless, it is clear that Toolco should not resume direct control at that time unless prior ap-

proval of the Board is sought and obtained."

It is clear from this opinion that the CAB does not look upon Toolco as controlling TWA after December 1960. Thus, anything done by Toolco subsequent to that date has not been approved by orders of the CAB and certainly no exemption exists as to the second claim.

■ We come now to the question of "primary jurisdiction" which is defendant's second ground for dismissal of these claims. In discussing the primary jurisdiction of the CAB in relation to this complaint, there is some overlap with the discussion as to the effect of an order issued under section 408(5) and the extent of the exemption granted by section 414. In this case we are concerned primarily with whether there exists exclusive primary jurisdiction in the CAB without regard to whether or not it has taken any action in relation to a particular transaction. Cf. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

Defendant places great reliance upon the recent decision of the Supreme Court in Pan American World Airways, Inc. v. United States, supra, popularly known as the Panagra case. In determining the scope of this decision we must first go to the next to the last sentence of the majority opinion, which reads:

"We think the narrow questions presented by this complaint have been entrusted to the Board and that the complaint should have been dismissed." 371 U.S. at 313, 83 S.Ct. at 486.

The Court was dealing with section 411 of the act, 49 U.S.C. § 1381, which gives the CAB jurisdiction over "unfair or deceptive practices" and "unfair methods of competition" by air carriers. The acts charged to be antitrust violations were limitations of routes, divisions of territories, and the relation of a common carrier to air carriers, which the Court stated were "precise ingredients of the Board's authority in granting, qualify-

ing, or denying certificates to air carriers, in modifying, suspending, or revoking them, and in allowing or disallowing affiliations between common carriers and air carriers." 371 U.S. at 305, 83 S.Ct. at 482. The Court went on to say:

"It would be strange, indeed, if a division of territories or an allocation of routes which met the requirements of the 'public interest' as defined in § 2 were held to be antitrust violations. It would also be odd to conclude that an affiliation between a common carrier and an air carrier that passed muster under § 408 should run afoul of the antitrust laws. Whether or not transactions of that character meet the standards of competition and monopoly provided by the Act is peculiarly a question for the Board, subject of course to judicial review * * *." 371 U.S. at 309, 83 S.Ct. at 484.

If we substitute in this quotation the words "acquisition of control of any air carrier by any person engaged in any other phase of aeronautics" in place of "an affiliation between a common carrier and an air carrier", we have presented the fact situation upon which Toolco relies. However, the acts complained of by TWA are acts allegedly done by the controlling party after the acquisition had been approved, not only to the detriment of the carrier in question, but to other carriers and to competitors of the controlling party. This in my view is the distinguishing factor between this case and the Panagra case. While the acts charged here could be proper subjects for consideration by the Board in determining whether control of TWA by Toolco was in the public interest,[4] they are not the type of acts over which the Board has exclusive primary jurisdiction. They are not within the contemplation of the regulatory powers granted the CAB. Cf. Georgia v. Pennsylvania R. R., supra.

■ Furthermore, the Board has no power to award damages, and we do not

4. See CAB Order No. E–16195 quoted at page 13, supra.

reach the statement of the Court in the Panagra case to the effect that since the Board's essential regulatory powers deal with the division of territories, etc., then Congress must have intended to give it authority that was ample to deal with the evil at hand. Rather, the statement by the Court that a court has jurisdiction under the antitrust laws if the agency has no power to grant relief is controlling here. 371 U.S. at 313 n. 19, 83 S.Ct. at 486 n. 19.

█ It is also clear that once a regulatory agency has acted the court is competent to consider and determine the scope of the exemption claimed. River Plate & Brazil Conferences v. Pressed Steel Car Co., 227 F.2d 60 (2d Cir., 1955); Putnam v. Air Transport Ass'n of America, supra. The cases of American Airlines v. Standard Air Lines, 80 F.Supp. 135 (S.D.N.Y.1948) and United States v. Railway Express Agency, 89 F.Supp. 981 (D.Del.1950), relied on by Toolco, are not in point.

In addition to the determination that as a matter of law the Board does not have exclusive primary jurisdiction over the acts alleged in the complaint, the practical aspects of this case make especially apposite the statement in the River Plate case, supra, to the effect that a reference to the agency would be "useless and time-consuming" (227 F.2d at 63). Over 10,000 pages of testimony have already been taken by Toolco in deposition proceedings and over one and a quarter million documents have been produced in these proceedings by all parties. If there is any policy that would favor referral, it is not present in this case. See Atlantic Coast Line R. R. v. Riss & Co., 105 U.S.App.D.C. 380, 267 F.2d 657, 658 (1958).

Consequently, the motion to dismiss is denied. The application made upon oral argument for a certificate pursuant to 28 U.S.C. § 1292(b) was denied at that time. Toolco's application for a stay of all deposition-discovery proceedings pending an application for a stay to the Court of Appeals was granted on the oral argument to the extent that all deposition-discovery proceedings are stayed until 5 p. m. February 8th, 1963 to allow Toolco time to request a stay from the Court of Appeals beyond that time.

So ordered.