**COLONIAL AIRLINES, Inc. v. JANAS et al.**

No. 135, Docket 22507.

United States Court of Appeals Second Circuit.

Argued Jan. 5, 1953.

Decided March 16, 1953.

See also D.C., 13 F.R.D. 199.

---

13. The Atlas, 93 U.S. 302, 23 L.Ed. 863. The Beaconsfield, 158 U.S. 303, 307, 15 S.Ct. 860, 39 L.Ed. 993.

14. § 401, Comment c, Restatement of Agency.

Henry N. Ess, III, New York City (Sullivan & Cromwell, Joseph L. Broderick and Marvin Schwartz, all of New York City, on the brief), for plaintiff.

Mortimor S. Gordon, New York City (Gordon, Brady, Caffrey & Keller, Herman Keller and Harry Balterman, all of New York City, on the brief), for defendant Sigmund Janas, Sr.

Gerald H. Ullman, New York City, for defendant Alfred N. Hudson.

Newell A. Clapp, Acting Asst. Atty. Gen. (Myles J. Lane, U. S. Atty., New York City, and Daniel M. Friedman, Sp. Asst. to Atty. Gen., John H. Wanner, Asso. Gen. Counsel, Emory T. Nunneley, Jr., Gen. Counsel, James L. Highsaw, Jr., Chief, Litigation and Research Division, and Jerome S. Boros, Atty., Civil Aeronautics Board, all of Washington, D. C., on the brief), for Civil Aeronautics Board as amicus curiae.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge:

Colonial Airlines, Inc., brought this action to recover damages of $500,000 allegedly sustained through defalcations of three of its former officers and for rescission of a stock option agreement with one of these, Sigmund Janas, Sr., who until 1951 had been president and a director of plaintiff. The other individual defendants named are Alfred N. Hudson, plaintiff's Vice-President—Advertising and Publicity at the time of the acts complained of, as described below, and Sigmund Janas, Jr., then Vice-President—Traffic, who was accused of diverting company funds for personal use. Also joined as a defendant is Monroe Greenthal, Inc., a New York advertising agency, which is charged with having received and turned over to Janas, Sr., $1,200 of plaintiff's funds to which it was not entitled. Federal jurisdiction is founded upon the diverse citizenship of the parties.

The allegations against Janas, Sr., and Hudson, the only two defendants involved on these appeals, may be summarized as follows: Both Janas and Hudson, it is claimed, received "kickbacks" from Colonial's advertising agencies and also diverted substantial amounts of plaintiff's funds to their private use by submitting false and fictitious expense statements and by causing plaintiff directly to pay for goods and services destined for their personal benefit. From Janas alone, plaintiff seeks in addition to recover secret premiums which he obtained on transactions in Canadian and Bermudian currency with the use of corporate funds; reimbursement is also demanded from Janas for a fine imposed upon plaintiff by the Canadian government for violation of its exchange restrictions in connection with these transactions. Plaintiff further charges Janas with liability for losses which it incurred on loans extended to Canadian Air Express, Ltd., a Canadian corporation in which Janas owned a controlling stock interest. Finally, plaintiff seeks rescission of the stock options already referred to on the ground that Janas had obtained them by misrepresenting to plaintiff that he had in the past devoted his best efforts to the corporation's interest and would continue to do so in the future. The individual items of monetary damage charged to Janas amount to a total of $370,998.42; those charged to Hudson total $41,885.

In their answers, Janas and Hudson deny plaintiff's allegations of wrongdoing and set up various defenses, including that of accord and satisfaction. This defense is based upon a prior proceeding before the Civil Aeronautics Board to which plaintiff, Janas, Sr., and Hudson were parties. On April 13, 1951, the CAB had issued an order instituting an investigation to determine whether plaintiff or any of its officers had violated certain provisions of the Civil Aeronautics Act, 49 U.S.C. § 401 et seq.,

and the Board's Economic Regulations and Uniform System of Accounts for Air Carriers. A bill of particulars served on the parties by the CAB pursuant to this order, as amended on April 16, shows that the proposed investigation involved essentially the same acts and transactions upon which plaintiff predicates the present action. On June 15, 1951, the parties to the CAB proceeding submitted to the Board a "Proposal of Adjustment and Consent" in which they "propose[d] that the matters in issue between them and the Board be adjusted" on specified terms and consented to the entry by the CAB of an order requiring them to cease and desist from future violations. This cease and desist order incorporated by reference the terms of the "adjustment" which required Janas to resign as an officer of plaintiff, to pay plaintiff $75,000, and, together with plaintiff, to plead *nole contendre* to criminal informations to be filed against them; the parties also undertook not to contest or seek review of the cease and desist order.

Janas and Hudson allege in their answers that the $75,000 was paid by Janas and received by plaintiff "in full satisfaction and discharge of any amounts due the plaintiff" from these defendants for the matters complained of. Janas' answer further alleges that the CAB warned him that his failure to accept the "Proposal" (whose terms both defendants aver had been suggested by the Board) would lead to revocation of plaintiff's Certificate of Public Convenience and Necessity, thus preventing plaintiff from operating as an air carrier. On the basis of this assertion, which is categorically denied by the CAB in its *amicus curiae* brief submitted to us, Janas counterclaims for $75,000, plus interest, to "prevent unjust enrichment of plaintiff."

Plaintiff moved to dismiss this counterclaim on the ground that the district court lacked jurisdiction over its subject matter in view of the action previously taken by the CAB. Before the return day of this motion, Janas, Sr., Janas, Jr., and Hudson cross-moved for dismissal of the complaint on the same ground. The district court granted the motions of Janas, Sr., and Hudson and dismissed the complaint as to them, but denied the similar motion by Janas, Jr., since he was not a party to the CAB proceeding. It also granted plaintiff's motion to dismiss the counterclaim. In rendering these rulings, the district court was of the opinion that the CAB had assumed exclusive jurisdiction over the present dispute in so far as it involved the parties to the Board's action. Plaintiff thereupon moved for reargument of defendants' motions and the CAB moved for leave to participate as *amicus curiae*. Both these motions were granted, and at the reargument the CAB took the position that the subject matter of neither the complaint nor the counterclaim was within the purview of its own jurisdiction. The district court accepted "the Civil Aeronautics Board's self-imposed limitation of jurisdiction," but adhered to its earlier disposition of defendants' motions with the succinct explanation that "Absent any indication that Colonial, when it entered into the compromise of June 15, 1951 with the defendants, was under the defendants' control or for any other reason not acting freely, the said agreement of June 15, 1951 appears to present the requisite elements of an accord and satisfaction." Since the court's dismissal of the counterclaim was apparently not challenged on reargument, that ruling also remained intact.

In the order entered upon its opinion, the district court made the determination under F.R. 54(b) that there is no just reason for delay in entering final judgment dismissing the complaint as to Janas, Sr., and Hudson and also dismissing the counterclaim. It accordingly directed the entry of judgment to this effect, thus paving the way for the present appeals by plaintiff and Janas from the portions of the judgment adverse to them.

## I. Plaintiff's Appeal

The first question for consideration on plaintiff's appeal is whether the district court could properly dismiss the complaint by sustaining the defense of accord and satisfaction on motion to dismiss for lack of jurisdiction over the subject matter. The court in substance treated these motions to dismiss as motions for

summary judgment. Cf. Suckow Borax Mines Consolidated v. Borax Consolidated, Limited, 9 Cir., 185 F.2d 196, certiorari denied 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680. F.R. 12(b) as amended shows the entire propriety of such a course where the motion to dismiss is made on the ground of failure to state a claim upon which relief can be granted. Since the motions actually made relied on the same facts—the CAB proceeding and order—upon which a motion to dismiss for failure to state a claim would have been based, and since the course of procedure is entirely the same, i. e., through motion supported by affidavit, the court was justified in viewing these motions as likewise converted into motions for summary judgment. 2 Moore's Federal Practice ¶ 12.09, 2d Ed.1948; Allison v. Mackey, 88 U.S.App.D.C. 154, 188 F.2d 983; William J. Kelly Co. v. R. F. C., 1 Cir., 172 F.2d 865. The fact that accord and satisfaction is an affirmative defense under F.R. 8(c) does not prevent adjudication on summary judgment where the essential facts are made clear of record. W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, 2 Cir., 186 F.2d 236; Albrecht v. Indiana Harbor Belt R. Co., 7 Cir., 178 F. 2d 577, certiorari denied 339 U.S. 949, 70 S.Ct. 804, 94 L.Ed. 1363; Gossard v. Gossard, 10 Cir., 149 F.2d 111.

■ On the merits, however, we cannot agree with the district court that defendants Janas and Hudson were entitled to judgment on the defense of accord and satisfaction. Janas may well have entertained the hope that his sizable payment to plaintiff would absolve him from any further liability for his alleged misdeeds. But such a desire is turned into legal reality only upon a showing that the parties mutually intended such an accord, and the burden of proof on this issue rests with the defendant. Reilly v. Barrett, 220 N.Y. 170, 173, 115 N. E. 453, 454. The record before us does not support the conclusion that Janas and Hudson have sustained their burden.

Defendants base their claim of an accord on the terms of the "Proposal of Adjustment and Consent" submitted by them and plaintiff to the Civil Aeronautics Board.

But the essential purpose of this agreement was to terminate a proceeding instituted by the Board to investigate possible violations of the Civil Aeronautics Act and CAB regulations, not to settle outstanding claims as between the parties. Thus the terms of the Adjustment are introduced by the following language: "In order to avoid lengthy and costly hearing, Colonial, Janas and Hudson propose that *the matters in issue between them and the Board* be adjusted on the following basis." (Emphasis added.) And the limitation of the agreement to matters of federal law violations involving the CAB on the one side and all of the parties on the other is further indicated by paragraph 10 of the Proposal: "The proposal of adjustment shall not be considered as an admission by Colonial, Janas or Hudson of any fact or conclusion of law in any proceeding, suit or action other than the present proceeding, the criminal proceedings mentioned in paragraphs 4 and 5 hereof, and any proceeding which may be brought or instituted for the enforcement of the undertakings made and the order to be entered herein." Nowhere in its text does the Proposal suggest that it constitutes a settlement as among plaintiff and these defendants.

■ Since the parties' affidavits do not shed any further light on their intentions, we turn to the only other available source of information on this issue, the Civil Aeronautics Board. While the Board's views are not conclusive in establishing the intention of the parties to a proceeding before it, they do have probative value here, since, as defendants allege in their answers, the terms of the Proposal originated with that body. In its brief, the Board is careful not to express any opinion on whether the parties intended the proposal to constitute an accord and satisfaction among themselves. But it adds in a footnote that it was never informed, either orally or in writing, that the parties intended the Proposal to have such effect. A still clearer indication of the Board's view appears in a statement, formally considered and adopted by the Board and released to the press at the time, explaining its action

in adopting the Proposal. The pertinent paragraph of this statement reads: "The Board explained that the $75,000 to be paid by Janas to Colonial represents restitution of excessive or improper expenditures of Colonial funds as reflected in the alleged violations of the Act by Janas. The Board made it clear that its acceptance of this provision does not represent an adjudication of the amount or amounts, if any, that may be due or payable to Colonial, nor does it in any way prejudice any rights of Colonial, its stockholders or other interested persons as a result of the alleged activities and practices of Janas." Certainly this statement leaves little doubt that the Board did not understand the Proposal to be an accord settling any claims among the parties.[1]

On the basis of what thus appears, we hold that defendants did not establish an intent of the parties to execute an accord, such as would be necessary to justify entry of summary judgment in their favor. But even if such an intent had appeared on the face of the Proposal, there would still be serious doubt whether summary judgment was warranted. The district court recognized that the requisite elements of an accord and satisfaction are present only if plaintiff was not under Janas' control at the time the agreement was executed. In this connection we cannot agree with Janas' contention that the participation of the Board made the question of his control of plaintiff academic; an accord and satisfaction requires the

arms-length agreement of the parties to it, regardless of who else may suggest or approve the terms. The Board's bill of particulars states that "The entire management and all the operations and activities of Colonial are, and have been since 1938, under the complete domination, control and direction of its President, Janas." While this assertion is not denied, defendant Hudson points out in his brief that the bill of particulars was served on April 14, 1951, some two months before execution of the Proposal. Janas, however, did not resign as president until the date that agreement was adopted. The papers before the district court do not indicate whether Janas retained full control to the date of his resignation. But if continuation of the *status quo* up to June 15 cannot be inferred from the facts in evidence, there is at least raised a genuine issue as to a material fact barring the entry of summary judgment. F.R. 56(c).[2]

Defendant Janas argues, however, that even in the absence of an accord and satisfaction the district court's dismissal of the complaint should be sustained on the ground that the Board made a conclusive determination of the measure of his liability to plaintiff. In other words, Janas contends that the Board's order is *res judicata* on the present action. We need not pass upon the question of the Board's power to adjudicate a breach-of-fiduciary-obligation claim by an air carrier against its officers, since it is abundantly clear from the facts presented that no such adjudication was here intended. The Board expressly dis-

---

**1.** This statement, being official action by a federal regulatory agency of authority as to the parties, may be judicially noticed by us, even though it does not appear as a formal part of the record below. N. L. R. B. v. E. C. Atkins & Co., 331 U.S. 398, 406 n. 2, 67 S.Ct. 1265, 91 L.Ed. 1563; Tucker v. State of Texas, 326 U.S. 517, 519 n. 1, 66 S.Ct. 274, 90 L.Ed. 274; United States v. Bradford, 2 Cir., 160 F.2d 729, 731, and cases cited, certiorari denied 331 U.S. 829, 67 S.Ct. 1351, 91 L. Ed. 1844. The district court did receive and rely upon facts reported to it by the CAB as *amicus curiae*, as the court states in its final memorandum of decision, although what they were does not here appear of record. It is obvious, however,

that their general nature was of the kind now presented to us by the Board; because of this careful and deliberate action of the Board we have deemed it a useless and unnecessary formality to return the action to the court below for the incorporation of these matters into the record through formal affidavit.

**2.** In view of our holding, we need not consider plaintiff's contention that the eleventh cause of action in its complaint—that demanding rescission of the stock options—was, in any case, not subject to the accord and satisfaction defense. That cause of action is now, of course, restored for trial with the rest of the complaint.

avows any such intent, and the terms of the Proposal and the Board's statement issued in connection therewith clearly point in the same direction. Violation of the Civil Aeronautics Act and CAB regulations was the only issue which concerned the Board. There is no reason to presume that its action also served to dispose of any claim plaintiff might have against defendants under state law, and all the evidence is to the contrary. The Civil Aeronautics Act itself recognizes that action taken under it does not supersede coexisting rights and liabilities. Section 1106, 49 U.S.C. § 676, provides: "Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." See S. S. W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F.2d 658.[3] It is thus clear from both the Act and the Board's action that there has been no determination by the Board of defendants' state law liability to plaintiff.

## II. Defendant Janas' Appeal

 The effect of the Board's order on Janas' counterclaim for the $75,000 paid plaintiff is not quite as clear. But here again we are disposed to follow the lead of the Board, which expresses the view that its order does not preclude Janas from asserting his counterclaim. Janas made his payment to plaintiff as one of the conditions for termination of the Board proceedings. The Board did not attempt to compel this payment, but simply made it an element of the consideration for its order. Had Janas refused, or if he now secures return of the $75,000, the Board would be free to continue its own proceedings and enter whatever further order it deemed appropriate. There is no claim of estoppel by way of any detrimental reliance which might prevent one of the parties from repudiating its adherence to the adjustment with the Board. Hence we hold that the district

3. W. R. Grace & Co. v. Civil Aeronautics Bd., 2 Cir., 154 F.2d 271, relied upon by defendant Janas, is inapposite and lends

court erred in dismissing Janas' counterclaim.

Judgment reversed on both plaintiff's and defendant Janas' appeal and action remanded to the district court for trial.

no support to his contention on the present facts.