**TRANS WORLD AIRLINES, INC.,**
**Plaintiff,**

v.

**Howard R. HUGHES and Hughes Tool**
**Company, Defendants,**

and

**The Equitable Life Assurance Society of the**
**United States et al., Additional De-**
**fendants on Counterclaims.**

Court of Chancery of Delaware,
New Castle.

Feb. 19, 1974.

Louis J. Finger, Richards, Layton & Finger, Wilmington, and Dudley B. Tenney, Paul W. Williams, and Marshall Cox, Cahill, Gordon & Reindel, New York City, for plaintiff.

George Tyler Coulson, Morris, Nichols, Arsht & Tunnell, Wilmington, and Chester C. Davis and Maxwell E. Cox, Davis & Cox, New York City, for defendants.

William Prickett, Prickett, Ward, Burt & Sanders, Wilmington, and Cravath, Swaine & Moore, New York City, for the additional defendants the Equitable Life Assurance Society of the United States and Metropolitan Life Ins. Co. and Harry C. Hagerty.

William S. Potter, Potter, Anderson & Corroon, Wilmington, appearing specially for the additional defendant Irving Trust Co.

Leroy A. Brill, Bayard, Brill & Handelman, Wilmington, and Sullivan & Cromwell, New York City, for the additional defendant Ernest R. Breech.

Carl Schnee, Tybout, Redfearn & Schnee, Wilmington, for the additional defendant Charles C. Tillinghast, Jr.

MARVEL, Vice Chancellor:

On June 30, 1961, Trans World Airlines, Inc., the plaintiff in this later filed action, instituted an anti-trust suit for treble damages in the District Court of the United States for the Southern District of New York against Howard R. Hughes, Hughes Tool Company, and Raymond M. Holliday, an official of the corporate defendant and a director of plaintiff, which complained of injuries allegedly suffered by plaintiff as a result of the improperly administered control exercised over the affairs of such corporation by the defendants Howard R. Hughes and Hughes Tool Company, which latter corporation (all of the stock of which was owned by Mr. Hughes) had prior to the inception of such federal action held an unfettered controlling 78% interest in the voting shares of the plaintiff.

The gist of the charges levelled against Hughes Tool Company and others in such action was that as a condition precedent to the furnishing of financial aid to plaintiff, Hughes Tool Company and others associated with it, had required that plaintiff acquire its needed aircraft solely through such defendant corporation and was thus caused to boycott all other suppliers of aircraft. Further complaint was made that plaintiff had been improperly forced by Hughes Tool Company and others associated with it to acquire needed aircraft through borrowings rather than through equity financing.

The complaint in question consisted of two federal claims alleging violations of federal anti-trust laws together with a third pendent state claim which alleged tortious interference by defendants with the business of TWA, which claim was based on the same facts pleaded in the first and second claims.

The complaint in this suit, which was filed on April 18, 1962, alleges substantially the same facts as those set forth in the federal complaint, the relief sought herein, however, being based on equitable principles governing the conduct required of corporate officers and majority stockholders in their dealings with their corporation, such action claiming breaches by the named defendants of their fiduciary duty to plaintiff and its minority stockholders.

This is the decision of the Court on the motion of the defendants to dismiss the pending complaint on the grounds of res judicata and collateral estoppel as well as under the provisions of Rule 41(b), Del.C. Ann., and, in the alternative, on the ground that approval by the Civil Aeronautics Board of business dealings between TWA and its controlling stockholder, Hughes Tool Company, here in issue, has resulted in the granting of immunity to defendants from this suit on the basis of the provisions of section 414 of the Federal Aviation Act, 49 U.S.C. § 1384,[1] defendants contending that the operative facts on which plaintiff relies in this case are substantially the same as those relied on in the federal litigation and that plaintiff may not be permitted to retry the consequences implicit in a prior ruling based on such facts merely because a different legal theory is now being pursued. Also ready for decision is the motion of the additional defendants for dismissal of the counterclaims asserted against them by the corporate defendant on the ground that such claims are also barred by the principle of res judicata.

Litigation between TWA and defendants, concerned with the control exercised over TWA by Hughes Tool Company by reason of the eventual ownership by Hughes Tool Company of 78% of TWA's voting stock, began, as noted above, in 1961, following the deposit of Hughes Tool Company's TWA stock in a voting trust, by the filing of an anti-trust action by TWA in the Federal District Court of the United States for the Southern District of New York. Thereafter, following almost a year of parrying over respective rights to discovery, this holding action was filed on April 18, 1962, Howard R. Hughes and again Hughes Tool Company being named as defendants. The motion of the defendant Howard R. Hughes to quash an order of sequestration, which had seized designated property of Mr. Hughes situate in Delaware for the purpose of compelling his appearance, as well as a motion to dismiss the complaint, having been denied, this Delaware action was thereafter held in abeyance without the entrance of a formal stay pending the outcome of the New York litigation.

In its answer to the New York complaint Hughes Tool Company pleaded as a defense that the transactions complained of in such action, having been conducted between two entities engaged in the aeronautics business, fell within the jurisdiction of the Civil Aeronautics Board and that by virtue of the Federal Aviation Act, 49 U.S.C. § 1301 et seq., such transactions, which had been found by the Board to have been essential to the public interest, were accordingly immune from prosecution under the provisions of the anti-trust laws. On the basis of such defense, Hughes Tool Company moved to dismiss the complaint,

1. This section purports to immunize a person affected by Civil Aeronautics Board orders under pertinent sections of the same act not only from federal anti-trust restraints but from " * * * all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved or required by such order."

which motion was denied (S.D.N.Y.), 214 F.Supp. 106, a decision which was affirmed on appeal. (C.A.2), 332 F.2d 602. Thereafter, on the failure of the defendants in such action to contest the allegations of the complaint, a default judgment was entered against Hughes Tool Company, which judgment was thereafter affirmed. The Supreme Court of the United States then granted certiorari, but later dismissed such writ as improvidently granted.

Such federal action was then remanded to the trial court which ordered the introduction of evidence on the issue of damages before a special master, a proceeding which the trial judge characterized as an inquest. The result of such proceeding was an initial award to plaintiff of $137,-611,435.95. The judgment of the trial court was then affirmed.

Thereafter, the Supreme Court of the United States again granted certiorari, and reversed the judgment of the Court of Appeals on the ground that the trial court had erred in denying the corporate defendant's motion to dismiss the complaint on the ground of its immunity from prosecution under the anti-trust laws because of the above cited provisions of the Civil Aeronautics Act, Hughes Tool Company v. TWA, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577. TWA's petition for rehearing was thereafter denied, and, upon remand, the New York complaint was then dismissed.

The present action, which has lain dormant since 1963 but as to which defendants have not sought dismissal for inaction, is now sought to be brought to trial by plaintiff, which seeks to have the named defendants held liable for breaches on their part of their fiduciary duty to plaintiff and its minority stockholders. The defendants, as noted above, have again moved to dismiss the complaint on the basis of the defenses above noted.

In support of their present motion to dismiss, defendants cite the case of Chadwick v. Gill, 16 Del.Ch. 127, 141 A. 618, for the proposition that this Court will not interfere with the prosecution of a companion case in another jurisdiction until final judgment, the Court holding in the cited case that until the entry of final judgment in one court or the other, each court should be open to the prosecution of the companion case. Thus, defendants argue, plaintiff, having rested on its rights in this present equity case since 1963, by not only failing to prosecute this action but by also permitting the New York case to go to final judgment in a case in which a pendent common law claim of breach of fiduciary duty was pleaded, such state cause of action may not be relitigated in this Court. In other words, it is contended that plaintiff should not now be permitted in this long pending litigation to assert a right to split federal statutory claims from a common law claim, and seek to proceed to trial on a common law claim after losing the federal statutory claims.

▬▬ Res judicata is a principle which " * * * embodies a rule of public policy, that courts as well as litigants should have rest and repose from the vexatious renewal of the same law suit.", Epstein v. Chatham Park, Inc., 2 Storey 56, 63, 153 A.2d 180. Thus, generally speaking " * * * a valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.", Restatement Judgments Second § 48, and constitutes an absolute bar to a subsequent action on the same claim as to the parties and their privies on all theories which were litigated or which could have been litigated in the earlier proceeding, Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. See also Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. The bar of res judicata also operates as a defense to any other admissible evidence which might have been offered to sustain or defeat the same claim, United States v. California and Oregon Land Company, 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476, and

Coca Cola Company v. Pepsi-Cola Company, 6 W.W.Harr. 124, 172 A. 260. The following formula is generally applied to test the applicability of the defense of res judicata: (1) is the claim in the second action the same as in the first action, (2) is the prior judgment a final personal judgment in favor of the defendant, and (3) are the parties to the second action parties or privies of parties to the first action.

■ In other words, a plaintiff will not be permitted, after losing a case on one theory, to pursue a different theory based on the same proof which has been rejected in the first action. Thus, in Norman Tobacco & Candy Company v. Gillette Safety Razor Company (C.A.5), 295 F.2d 362, a subsequent anti-trust action based on the refusal of a defendant to do business impartially, a contention which had been held to have failed of proof in an earlier contract action, was found to have constituted an improper splitting of causes of action and thus barred by the principle of res judicata. See also McCann v. Whitney, Sup., 25 N.Y.S.2d 354, and Woods Exploration and Producing Company, Inc. v. Aluminum Company of America (C.A.5), 438 F.2d 1286, in which cases it was held that a failure to assert both anti-trust claims based on both state and federal statutes in the same action constituted an improper splitting of a single cause of action.[2] On the contrary, in Household Goods' Carriers Bureau v. Terrell (C.A.5), 452 F.2d 152, it was held that a libel suit settled by consent decree was not res judicata as to a subsequent anti-trust action based on the same facts as the previous suit, the court noting that " * * * it is well established that in a proper case one wrongful act may be the subject of two or more separate and distinct causes of action," the court pointing out that violations of two separate and

distinct primary rights had been alleged, one a personal right to be protected from potentially libelous publications and the other a business right to be free from conspiracies in restraint of trade. See also Penn Mart Realty Company v. Becker (Del.Ch.), 298 A.2d 349.

■ However, if the defense of res judicata is to be successfully advanced, the earlier judgment on which a movant relies must be a valid and personal judgment, and for the defense of collateral estoppel to be successfully advanced, the final judgment in the prior case must have been predicated on those issues or matters sought to be litigated in the second action, Cromwell v. County of Sac, supra.

■ In short, a valid and final personal judgment is one which " * * * reaches and determines 'the real or substantial grounds of the action or defense as distinguished from matters of practice, procedure, jurisdiction or form,', Clegg v. United States (C.A.10), 112 F.2d 886, 887," Saylor v. Lindsley (C.A.2), 391 F.2d 965. Thus, a judgment in a prior action will not serve as a bar to a second suit " * * * if the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action.", Hughes v. United States, 4 Wall. (71 U.S.) 232, 233, 18 L.Ed. 303. In the case of Equity Corporation v. Groves, 30 Del.Ch. 68, 53 A.2d 505, however, it was held that:

> "If the determination of a question is not actually necessary to sustain the prior judgment or order, it is, however, regarded as a mere collateral or incidental matter, and will not sustain a plea of res judicata."

2. The decision in the Woods case was based on a theory that the federal district court had pendent jurisdiction to entertain a state anti-trust claim on the authority of United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. Since the Gibbs case did not liberalize the federal view of pendent jurisdiction until 1966, it is questionable whether the district court in the present case would have exercised pendent jurisdiction under the rule in effect in 1961. Compare Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

On the other hand, in the case of Brady v. Trans World Airlines, Inc. (Del.Super.), 274 A.2d 146 it was held that a prior action did constitute a bar to a subsequent action, the Court stating:

"It suffices if the prior judgment has determined the issues of fact raised by the pleadings essential to the maintenance of the second action, even though in form the second action differs from the first."

In reversing the judgment below in the federal litigation here relied on as a bar to the present action, the Supreme Court of the United States held:

"Whether or not that complaint states a cause of action under the anti trust laws is a question we do not reach. Another defense of Toolco was that those transactions were under the control and surveillance of the Civil Aeronautics Board and by virtue of the Federal Aviation Act these transactions have immunity from the anti trust laws.

"It is our view that the Court of Appeals erroneously rejected that defense.", 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577.

Thus, the gist of the ruling by the Supreme Court was that the surveillance of the Civil Aeronautics Board over the conduct of Hughes Tool Company, in its capacity as the controlling stockholder of TWA, had rendered Hughes Tool Company immune from attack under the provisions of the anti-trust laws. And I find it significant that while the Supreme Court stated by way of dictum that such Civil Aeronautics Board approval would have undoubtedly barred a derivative stockholders suit under the anti-trust laws filed the day after the Board's primary order, no reference was made in such opinion to a stockholders suit thereafter filed based on

the ground of common law principles governing the fiduciary duties of corporate officers and majority stockholders to their corporation. In short, plaintiff, in 1961, had alternative remedies, one of which was based on federal anti-trust laws, the other based on common law principles of fiduciary duty, including the wrong inherent in an alleged seizing of a corporate opportunity, and elected to proceed on its anti-trust remedies. It is its equitable remedies which TWA now seeks to pursue in this litigation.

■ I conclude that the ruling of the Supreme Court in the federal action, which involved the same parties and events here in issue, was solely to the effect that the federal statutory remedies under the anti-trust laws pursued in such action by plaintiff and granted in the lower federal courts were unavailable to plaintiff solely because the intercorporate dealings allegedly forced on TWA by Hughes Tool Company had been rendered immune from attack under the anti-trust laws by reason of the provisions of the Federal Aviation Law. Such ruling does not, therefore, in my opinion, furnish a basis for the defense of res judicata in this litigation. Accordingly, defendants' motion to dismiss, insofar as it is grounded on such theory, must therefore be denied.[3] Nor does such federal holding support a plea of collateral estoppel because the issue in the present case, namely defendants' alleged commission of acts constituting breaches of their fiduciary duties toward plaintiff was likewise not determined in such litigation. Therefore, defendants' motion to dismiss, insofar as it is based on the theory of collateral estoppel, is also denied.

Finally, defendants rely on Rule 41(b) as an alternative ground for barring the present action, pointing out that the order dismissing the federal complaint in the

---

3. The same result is suggested by the Restatement of Judgments § 65 as follows:
"(2) Where a judgment is rendered in favor of the defendant because the plaintiff seeks a form of remedy which is not available to

him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy." See also Scott, Collateral Estoppel by Judgment, 56 Harv.L. Rev. 1, 25.

companion litigation here relied on did not provide that such dismissal was without prejudice. In other words, defendants contend that under the provisions of Rule 41 (b), which govern involuntary dismissals, that the dismissal of the federal litigation in New York was accordingly with prejudice and thus constituted a dismissal of such case on the so-called merits.

However, the history of such litigation, when read in conjunction with the language of Rule 41(b) and the construction placed on such rule in the case of Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551, (which interprets the rule as adhering to the common law when a dismissal is entered before the entry of a final personal judgment), fails to support defendants' argument. Rule 41(b) refers first to a motion to dismiss made after plaintiff " * * * has completed the presentation *of* his evidence" because " * * * *upon* the facts and the law the plaintiff has shown no right to relief."

■ The corporate defendant's motion in the federal court, which was ultimately upheld by the Supreme Court of the United States, was not made after plaintiff had presented all or even any of its evidence as to liability but rather on the theory that as a matter of law plaintiff had failed to establish its claim. Indeed, because defendant chose to rely solely on its defense of immunity from prosecution under the anti-trust laws on the basis of the Federal Aviation Act, the issue of liability was resolved in favor of plaintiff as a result of a default judgment (S.D.N.Y.), 32 F.R.D. 604. Accordingly, subsequent litigation in the trial court and on appeal was thereafter concerned solely with the quantum of damages suffered by plaintiff. Finally, as I construe the Supreme Court's opinion in the companion litigation here in issue, the only question determined by such Court was that defendant was not subject to liability under the anti-trust law because of the approval by the Civil Aeronautics Board of Hughes Tool Company's dealings

with plaintiff as being in the public interest, such holding evidently being based on a policy of avoiding unnecessary clashes between a federal regulatory agency and the federal courts. Compare Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, and Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325. In short, none of the operative facts here in issue was ever litigated and resolved in the federal case. I conclude accordingly that the further prosecution of this action on a common law theory of fiduciary duty is not barred by dismissal of a companion federal case in a situation in which federal regulatory provisions are paramount inasmuch as the power to grant immunity from the operation of the anti-trust laws operates solely to oust the federal courts of jurisdiction to enforce such laws. See Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576, and United States Navigation Company v. Cunard S. S. Company, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408.

Finally, the case of Costello v. United States, supra, holds that in a situation in which a litigant has not been required to defend on the merits, a dismissal with prejudice will not be presumed. In the federal case defendants did not defend on the merits but rather acquiesced to the entry of a default judgment. I conclude that defendants' motion to dismiss the present complaint insofar as it is predicated on Rule 41(b) must be denied.

■ Having failed on their motion to dismiss the complaint on the ground of res judicata, defendants also seek dismissal of the pending complaint on the ground that they are immunized from attack under state law by virtue of 49 U.S.C. § 1384. In opposing such motion, plaintiff argues that no provision of the Federal Aviation Act precludes the type of redress which it seeks here and that its common law and statutory remedies under state law have

been expressly preserved by 49 U.S.C. § 1506.[4]

In response, defendants ask this Court to adopt a construction of 49 U.S.C. § 1384 which would provide for blanket immunity from virtually all restraints imposed by state law once approval of a transaction between persons engaged in the aeronautics field has been granted.

In Newmark v. RKO General, Inc. (S.D. N.Y.), 294 F.Supp. 358, aff'd (C.A.2), 425 F.2d 348, however, the court held that Civil Aeronautics Board approval of a merger did not insulate directors from compliance with § 16(b) of the Securities Exchange Act. Furthermore, in the case of Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84, the Supreme Court held that the area encompassed under a state anti-discrimination statute was not preempted by federal laws regulating interstate commerce in a situation in which the state regulations did not unduly burden interstate commerce and where there was no clear intent expressed by Congress that state remedies should be barred. See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348, in which the Supreme Court restated its position as to the effect of federal regulations in the field of commerce as follows:

> " 'The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakeably so ordained.' Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)."

■ Applying these principles to the instant case, I find no conflict between federal aeronautics policy and the laws of Delaware, nor does the present action create an undue burden on commerce. The policy behind the Federal Aviation Act is primarily to centralize power in the public interest so as to frame rules for the safe and efficient use of the nation's aeronautics facilities, Airline Pilots Association, International v. Quesada (C.A.2), 276 F.2d 892, as well as to provide an agency endowed with the authority to supervise airline rates and services, Lichten v. Eastern Airlines (C.A.2), 189 F.2d 939.

■ There being no conflict, in my opinion, between federal policy as to the operation of aeronautic companies and state law having to do with corporate fiduciary duty, the present suit must, in my opinion, be allowed to proceed, Southeastern Aviation, Inc. v. Hurd, 209 Tenn. 639, 355 S.W.2d 436, appeal dismissed, 371 U.S. 21, 83 S.Ct. 120, 9 L.Ed.2d 96. See also Pennsylvania Railroad Company v. Puritan Coal Mining Company, 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867.

In other words, the surveillance of transactions between the present corporate litigants by the Civil Aeronautics Board, according to the Supreme Court in the federal case here in issue, was carried on in the public interest rather than in the interest of corporate creditors and stockholders, the Supreme Court stating that: " * * * the control which *CAB* is authorized to grant or to deny under § 408 involves an appraisal of the impact of that control in terms of monopoly and · competition * * *", a routine area of examination for a federal regulatory agency. See Colonial Airlines, Inc. v. Janas (C.A.2), 202 F.2d 914; Otis & Company v. Pennsylvania R. Company (E.D.Pa.), 61 F.Supp. 905 aff'd (C.A.3), 155 F.2d 522, and Casey v. Woodruff, Sup., 49 N.Y.S.2d 625.

---

4. "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

On the other hand, private grievances, such as charges of breach of fiduciary duty, are clearly beyond the jurisdiction of a federal administrative agency and do not, in my opinion, bar state action based on equitable doctrines of corporate fiduciary duty, Otis & Company v. Pennsylvania R. Company, supra. See also McFaddin Express, Inc. v. Adley Corp. (C.A.2), 346 F.2d 424.

Next, the holding in Pan American World Airways, Inc. v. United States, supra, does not require that immunity be extended to the present suit. Here the question is whether or not the Federal Aviation Act preempts state law governing plaintiff's equitable rights, and the inquiry herein as to such rights has been carried on in light of possible conflict between such rights and the announced federal legislative purpose. Having found no conflict between plaintiff's state claims and the result reached by the federal agency here involved and its affirmed findings, defendants' motion to dismiss this action, which is based on fiduciary principles, on the theory of immunity from suit by reason of the provisions of the Federal Aviation Act, is denied.

Turning finally to the motions of the additional defendants to dismiss the counterclaims of the defendant Hughes Tool Company, which have to do with the third party defendants' alleged abuse of their rights in providing financing for plaintiff under the voting trust, I conclude that such counterclaims are clearly barred by the doctrine of res judicata and that such motions must be granted. The active parties in this litigation are substantially the same as in the New York action, and the defendant Howard R. Hughes, who has not appeared in either action, is admittedly in privity with his wholly-owned Hughes Tool Company. The claims asserted by Hughes Tool Company against the additional defendants are the same here as were advanced in New York. The lack of merit in such claims was found in the decision of the Court of Appeals (C.A. 2), 332 F.2d 609, and such decision became final when the Supreme Court dismissed its writ of certiorari on such ruling as improvidently granted. Compare Cromwell v. County of Sac, supra.

On notice, an appropriate order in conformity with the foregoing may be submitted.