**Howard R. HUGHES and Hughes Tool Company, Defendants below, Appellants,**

**v.**

**TRANS WORLD AIRLINES, INC.,**
Plaintiff below, Appellee,
and
The Equitable Life Assurance Society of the United States et al., Certain Additional Defendants below, Appellees.

Supreme Court of Delaware.

Argued Sept. 25, 1974.

Decided Feb. 26, 1975.

3. See 23A. C.J.S. Criminal Law § 1337, p. 923.

George Tyler Coulson, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Chester C. Davis and Maxwell E. Cox, of Davis & Cox, New York City, for defendants below, appellants.

Louis J. Finger, of Richards, Layton & Finger, Wilmington, and Dudley B. Tenney, Paul W. Williams, Marshall Cox and Michael P. Tierney, of Cahill Gordon & Reindel, New York City, for plaintiff below, appellee.

Leroy A. Brill, of Bayard, Brill & Handelman, Wilmington, and Marvin Schwartz, of Sullivan & Cromwell, New York City, for Ernest R. Breech, additional defendant below, appellee.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, and John R. Hupper and Andrew P. Tashman, of Cravath, Swaine & Moore, New York City, for certain other additional defendants below, appellees.

Before DUFFY and McNEILLY, JJ. and BIFFERATO, Judge.

DUFFY, Justice:

This appeal brings up for review an order of the Court of Chancery denying a motion to dismiss the complaint and granting motions to dismiss certain counterclaims.

I

The case involves a contest, long in litigation, between Howard R. Hughes and Hughes Tool Company (Toolco) (defendants), on the one side, and Trans World Airlines, Inc., (plaintiff), on the other.[1] The pertinent facts are stated in the opinion of the Vice Chancellor, 317 A.2d 114 (Del.Ch.1974), and we will restate them

1. Privity between Hughes and Toolco is conceded by each side and for present purposes their positions are indistinguishable.

only to the extent necessary as we consider defendants' argument for reversal.[2]

## II

In Hughes Tool Co. v. Trans World Airlines, Inc., supra (1973 opinion), the Supreme Court of the United States concluded that TWA's complaint against Toolco for alleged anti-trust violations and damages should be dismissed and, in accordance with its mandate, the United States District Court for the Southern District of New York entered a judgment of dismissal.

Briefly, the complaint in this action is based on alleged violations of fiduciary duties to the corporation and its minority stockholders by corporate officers and the majority stockholder. For present purposes, it appears that the facts alleged are substantially the same as those pleaded in the anti-trust action. Defendants argue that the Federal judgment bars prosecution of this case. They say that judgment was valid, final, personal and on the merits of the same claims asserted here (and which could have been asserted there). In so contending, they invoke the familiar doctrine of *res judicata.*

*Res judicata* embodies a rule of public policy that courts as well as litigants should have rest and repose from vexatious renewal of the same lawsuit. Epstein v. Chatham Park, Inc., 52 Del. 56, 153 A.2d 180 (1959). It precludes a second attempt to litigate the same "cause of action" and, under certain circumstances, matters which might have been litigated in the prior suit. Ezzes v. Ackerman, Del.Supr., 234 A.2d 444 (1967). Clearly, a valid, final and personal judgment entered on the merits of a

controversy puts to rest all matters litigated. Restatement of Judgments § 48 (1942).

Central in the rule is the rationale that a person is entitled to an opportunity to once litigate a claim on its merits, and once only. Renewal of the same claim after disposition on its merits is not permissible, whatever the theory. But basic to the principle of rest and repose is the notion that one is entitled to his day in court on the merits of a claim. This means that a judgment for a defendant, which is valid and final but not "on the merits," is conclusive only as to what is actually decided. Restatement, supra, § 49.[3]

These principles are well known and, indeed, there is little, if any, dispute about them as long as they remain in abstraction. But our duty is to test them against the submissions in the dispute, and now we do so.

As we have noted, the Toolco (and Hughes)-TWA litigation has been ongoing for years but, beyond doubt in deciding this case, the key opinion is the 1973 decision by the United States Supreme Court. That was dispositive of all litigation in the Federal Courts and it mooted all that had gone before which was inconsistent with the result. The default by Toolco and the entry of a money judgment were among the casualities of the Supreme Court mandate.

The Supreme Court opinion considers many matters but our reading persuades us of two things which are significant for present purposes: first, the Court considered the controversy only and entirely in the context of the Federal anti-trust statutes; and, second, it did not consider

---

2. See also the many opinions in the Federal Courts; thus: Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); rehearing den. 410 U.S. 975, 93 S.Ct. 1435, 35 L.Ed.2d 707 (1973); cert. granted 405 U.S. 915, 92 S.Ct. 960, 30 L.Ed.2d 785 (1972); 2 Cir., 449 F.2d 51 (1971); S.D.N.Y., 359 F.Supp. 783 (1973); S.D.N.Y., 312 F.Supp. 478 (1970); S.D.N.Y., 308 F.Supp. 679 (1969). Earlier

opinions are reported at 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965); 379 U.S. 912, 85 S.Ct. 261, 13 L.Ed.2d 184 (1964); 2 Cir., 332 F.2d 602 (1964); S.D.N.Y., 214 F.Supp. 106 (1963); see also: 40 Del.Ch. 552, 185 A.2d 886 (1962).

3. We do not consider such matters as jurisdiction and capacity. See Comment a to § 49.

whether the complaint stated a cause of action under those statutes.

As to the first of these, an extended review of the opinion by Justice Douglas is not needed to document the conclusion that the Court diposed of the litigation entirely on the basis of anti-trust principles, statutory and decisional.

"It is our view," he wrote, "that the Court of Appeals erroneously rejected" Toolco's defense that the transactions attacked in the complaint "were under the control and surveillance of the Civil Aeronautics Board and by virtue of the Federal Aviation Act of 1958 these transactions have immunity from the anti-trust laws." He discussed the Federal Aviation Act, the duty and authority of the Civil Aeronautics Board, the relationship of Toolco and TWA and the Board's duty to supervise it, and specific transactions approved by the Board. Following the Court's earlier decision in Pan American World Airways Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963), he found that CAB jurisdiction "pre-empts the anti-trust field." In short, Justice Douglas found that the way in which control of an air carrier is exercised is under CAB surveillance, "not in the hands of those who can invoke the sanctions of the anti-trust laws."

And then, as to the Federal complaint on which the case reached the Supreme Court, Justice Douglas wrote: "Whether or not that complaint states a cause of action under the anti-trust laws is a question we do not reach." Since the Court did not reach even the allegations of the complaint, it obviously did not consider the merits of the proof offered by TWA in support thereof.[4]

Given the basis on which the Supreme Court ordered termination of the litigation in the Federal Courts, we cannot say (in either law or justice) that the merits of the controversy were reached. The merits *were* reached in the District Court where a default had been entered, evidence had been received and a money judgment entered (and affirmed by the Circuit Court). But all of that was made irrelevant by what the Supreme Court decided. Certainly it made no factual adjudication. And it disposed of the litigation, not on the basis of default or evidence or money judgment, but on the transactional immunity conferred by the CAB under the Federal Aviation Act to a complaint founded on a Federal anti-trust statute.

■ In this context we conclude that the decision by the United States Supreme Court was not "on the merits" of the same claims alleged here to be violations of Delaware fiduciary law. Thus a significant requirement for a bar by *res judicata* is missing. Epstein v. Chatham Park, Inc., supra; Restatement, supra, § 49, and that defense does not stop the litigation.

### III

There are other arguments to consider and weigh, and we now turn to defendants' contention that, under Rule 41(b) of the Rules of Civil Procedure, the dismissal by the District Court in New York was an adjudication on the merits.

Chancery Rule 41(b), Del.C.Ann., like the Federal Rule, provides that

> " . . . [u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

To the extent defendants argue that the Supreme Court opinion directing dismissal was an adjudication on the merits, for purposes of this case, the contention is without merit for reasons already stated. But

---

4. The Court did discuss five transactions which were a basis of damages awarded by the District Court but it did so only for the purpose of determining whether such transactions were "neutralized" by CAB approval.

it was the District Court which entered the dismissal order and the argument by defendants obliges us to examine what was done in and by that Court.

Judge Metzner filed an opinion with the order of dismissal so we have the benefit of his view of what was done, and that is particularly significant since Rule 41(b) attaches consequences to a dismissal "[u]nless the Court . . . otherwise specifies."

First, it is clear that the dismissal was upon the merits "as far as the federal claims are concerned." But, in our view, a fair reading of Judge Metzner's opinion does not lead to the same conclusion about the non-federal claims. On the contrary, we are satisfied that he believed such claims are *not* barred by his order. Thus, he wrote that "it does not follow that such a dismissal [in the Federal Court] would be a bar to the nonfederal claims" and then discussed Calderone Enterprizes Corp. v. United Artists Theater Circuit, Inc., 2d Cir., 454 F.2d 1292 (1971), cert. den. 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972). In that case the Second Circuit stated that since "federally-based claims were properly dismissed prior to trial, . . . pendent state claims must also be dismissed and the plaintiff relegated to the state courts for relief." Judge Metzner particularly noted that the dismissal in *Calderone* had not been made without prejudice, and then he said this:

" . . . I gather from this that such a safeguard is not necessary to protect whatever rights plaintiff may have in this regard. It might also be argued that, standing alone, the court is without jurisdiction of the state claims and thus the dismissal is for lack of subject matter jurisdiction which is not on the merits under Rule 41(b)."

The Court was under a mandate from the United States Supreme Court "to dismiss the complaint" and its reluctance to amend that directive was explicit, while observing that there is doubt as to whether an amendment "is necessary to protect the interests of the parties."

Under Rule 41(b) a prior dismissal operates as an adjudication upon the merits unless the court in its dismissal order otherwise specifies. We are satisfied that the District Court intended that its order would not settle non-federal claims and, to that significant extent, it otherwise specified. Thus, neither the order nor the Rule, singly or in combination, operates as an adjudication to bar assertion of the claims here.

### IV

We turn now to defendants' argument that the claims alleged in the complaint could have been asserted in the Federal action under the theory now advanced. In brief, they say that the Federal Court would have taken pendent jurisdiction of the claims based upon violation of fiduciary duties and the right to litigate such claims in the state forum terminated with the judgment in that Court.

Acceptance of pendent jurisdiction by a Federal Court is a matter of judicial discretion. While such jurisdiction has been taken by those Courts for many years, the key opinion defining it was written by Justice Brennan after the TWA-Toolco-Hughes litigation had been ongoing for some five years. In United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court stated:

" . . . Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer

subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (Citations and footnotes omitted.)

■ We are asked to hold now that if the District Court had been requested in 1961 to exercise its discretion and take jurisdiction of the non-federal claims based

upon violation of Delaware fiduciary duties, it would have done so; and we are further asked to hold now that had it done so the Federal Courts would in some way or other have dealt with the claims.

It is true that the District Court was asked to and did accept jurisdiction of TWA's (non-federal) claim for tortious interference with its business, but in divining what might have been a dozen years ago we cannot ignore what has taken place in the law since then.

In *Gibbs* the Supreme Court "completely reformulat[ed] the doctrine; [and] greatly expanded the permissible exercise of pendent jurisdiction" in the Federal Courts. UMW v. Gibbs and Pendent Jurisdiction, 81 Harv.L.Rev. 657 (1968). But even with that expansion, *Gibbs* makes clear that if Federal claims, which are substantial in a jurisdictional sense, are dismissed before trial, "the state claims should be dismissed as well." While in one sense the TWA claims in the Federal Court were not dismissed before trial, the result of the Supreme Court opinion (which in no way deals with the merits of the claims) surely gives that effect. To state the point somewhat differently, if an action for alleged violation of an anti-trust statute is now filed in a Federal Court, and if the Transactions in question have been approved by the CAB, there can be no doubt that the complaint will be dismissed and, under *Gibbs*, the Court will *not* assume jurisdiction of pendent (state) claims.[5]

5. Defendants rely upon Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) and Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), in support of a contrary proposition. In both of those cases the pendent (statutory) claim was *Federal* (appended to Federal constitutional claims), not *state*, and the distinction is significant in the process of conjecturing whether or not a Federal Court will entertain a pendent claim. As Justice Douglas said in his concurring opinion in *Rosado:*

"The main distinction between this case and *Gibbs* is that the pendent claim here was one of federal rather than state law. And it is clear from the opinion in *Gibbs*

that the factor of federal-state comity is highly relevant in deciding whether or not the exercise of pendent jurisdiction is proper. Thus the Court stated: 'There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.' *Id.*, at 727, 86 S.Ct. at 1139. Since the claim involved here is one of federal law, the reasons for the exercise of pendent jurisdiction are especially weighty, and exceptional circumstances should be required to prevent the exercise."

*Hagans* discussed state claims but only in the context of attachment to Federal constitution-

**578**

In short, we have the benefit of hindsight in deciding whether the TWA claims alleged for violation of Delaware fiduciary duties should be regarded as ones over which the Federal Court would have assumed jurisdiction (as it did with the claim for tortious interference) and we cannot ignore what the United States Supreme Court decided both in this case and in *Gibbs*. Admittedly, the issue has its uncertain aspects because the Court did take on the claim for tortious interference. But, in our view, it would elevate speculation over reality to now dispose of this case by theorizing about what might have been (had the State claims been raised pendently in 1961).

And if there were any doubt about what ruling should be made the commands of justice require us to give TWA its day in court on the claims.

It should also be noted that the Chancery complaint was filed in 1962 and defendants did nothing to either bring it on for disposition or to ask the Federal Court to accept jurisdiction of the claims. On the contrary, in 1963 defendants joined TWA in persuading the Vice Chancellor to let the case (and, necessarily, the claims made herein) rest while awaiting determination of the Federal case. The Court did so and defendants acquiesced therein for ten or eleven years.

In sum, we decline to deny TWA all opportunity to litigate its claims on the theory that the Federal Court would have taken jurisdiction of them.

## V

Next, we consider defendants' argument that the CAB orders, which the Supreme Court held were a defense to the Federal action, likewise bar this action.

Section 414 of the Federal Aviation Act, 49 U.S.C. § 1384, provides that any person affected by an order under § 408 is relieved

" . . . from the operations of the 'anti-trust laws' . . . and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

The Vice Chancellor found that neither the purpose of the Act nor its case history bars a state action based on breach of a fiduciary duty.

Essentially, defendants argue that § 414 means what it says and that, once CAB approval is given, *all* other restraints or prohibitions are barred.

Locating state law in areas subject to Federal regulatory jurisdiction is difficult but that does not mean it has vanished. Certainly state power (and responsibility) does not disappear merely because there is Federal regulation in an area of commerce. The guiding principle was restated by the Supreme Court in Merrill Lynch Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), when it considered the extent to which authority delegated under a Federal regulatory statute (Securities Exchange Act of 1934 § 6, 15 U.S.C. § 78f preempts state (labor) law; the Court quoted from an earlier opinion by Justice Brennan, thus:

"The principle to be derived from our decisions is that federal regulation of a

---

al claims, thereby invoking the preference for first deciding non-constitutional issues. As the *Hagans* Court said:

". . . [T]he rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment. These considera-

tions favoring state adjudication are wholly irrelevant where the pendent claim is *federal* but is itself beyond the jurisdiction of the District Court for failure to satisfy the amount in controversy. In such cases, the federal court's rendition of federal law will be at least as sure-footed and lasting as any judgment from the state courts."

It is *Gibbs* which deals explicitly with a pendent state claim, and we follow its rule.

field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakably so ordained."

As the Vice Chancellor stated, the purpose of the Federal Aviation Act is to centralize power in the public interest so that rules may be made for the "safe and efficient use of the nation's air space." Air Line Pilots Association, International v. Quesada, 2 Cir., 276 F.2d 892 (1960). Section 414 must be read in light of that purpose and the specific preservations of common law (and statutory) remedies by § 1106 of the Act, 49 U.S.C. § 1506, which provides:

> "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

We deal here with an intra-corporate conflict. The claims are large, the events are dated and complex; but in essence, the contest simply invokes standards of conduct applicable to corporate fiduciaries and litigated over the years in Delaware Courts. Nothing has been called to our attention which persuades us that the Congress intended to preempt State power to regulate such conduct (as part of our "housekeeping" function, if nothing more) and vest it in the CAB. What remedies would the Board provide? What judgments would it render? What protection would it accord to minority stockholders, and by what process?

The short of it is that the CAB's basic mission and competency is, as Chief Justice Burger emphasized in his dissent in *Hughes Tool,* supra, the regulation of entry into and competition within the air transportation industry. There has been here no showing that any general Federal purpose is vested in the CAB to preempt state regulation of the intra-corporate af-

fairs of those subject to CAB jurisdiction for airline regulation purposes. See Newmark v. RKO General Inc., S.D.N.Y., 294 F.Supp. 358, aff'd 2 Cir., 425 F.2d 348 (1970); and Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963); and compare Colonial Airlines v. Janas, 2 Cir., 202 F.2d 914 (1953), in which the Court noted that it is "clear from . . . the Act," 49 U.S.C. § 676, that the CAB had not made any determination of state law liability running to a corporation from its officers on charges of defalcations.

■ We must, and of course do, give deference to all that the CAB approves within the jurisdiction assigned it by the Congress. And we specifically refrain from any comment as to the significance of CAB approval of any specific transaction upon liability of defendants. As TWA concedes in its brief, whether any particular issues were finally determined in the Federal action is not at issue in this appeal. We are concerned here only with defendants' contention that a blanket immunity flows from § 414, no matter the circumstances. We decide that TWA may proceed with the litigation.

### VI

Finally, we take up the counterclaims defendants filed against The Equitable Life Assurance Society of the United States, Metropolitan Life Insurance Company, Irving Trust Company, Harry C. Hagerty, Ernest R. Breech and Charles Tillinghast, Jr. (additional defendants) seeking injunctive and other relief. The Vice Chancellor ordered dismissal of the counterclaims on the ground that they are barred by the doctrine of *res judicata.*

As we understand defendants' argument, they say that if the Vice Chancellor's order stands and the Federal order is not a bar to TWA's action, this Court should require an even-handed result; that is, "Both should be dismissed or neither."

■ In our opinion the Vice Chancellor was right in dismissing the counterclaims. Defendants' argument assumes that the rationale for dismissals by the Federal Court of the complaint and the counterclaims was the same, and that is not so. We have already discussed at some length the basis for dismissal of the complaint as ordered by the United States Supreme Court. The counterclaims were dismissed, not on the absence of a statutory remedy or CAB approval, but specifically on their merits and "with prejudice" because of Toolco's "willful and deliberate disobedience of and failure and refusal to comply with" certain discovery orders of the District Court.[6] The Court of Appeals affirmed, 2 Cir., 332 F.2d 602 (1964), and its decision became final when the United States Supreme Court dismissed its writ of certiorari as improvidently granted. 380 U.S. 249, 85 S.Ct. 934, 13 L.Ed.2d 818 (1965).

\* \* \*

Affirmed.

6. As to the first five Federal counterclaims; the sixth counterclaim was disposed of on the merits, TWA's motion for summary judgment being granted by the District Court. These six Federal counterclaims are identical in scope to the four counterclaims asserted in this Chancery action.